## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**CASE NO:**  8:23-cv-221

MYCOL AKHILE, an individual,

    Plaintiff,

v.

SETH HOLBROOK FITNESS, LLC d/b/a Social Athlete,
a Florida limited liability company,
and SETH HOLBROOK, an individual,

    Defendants.

_____/

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, MYCOL AKHILE (hereinafter "Akhile" or "Plaintiff"), an individual, by and through his undersigned counsel in the above-styled cause, hereby files this Complaint against Defendants, SETH HOLBROOK FITNESS, LLC d/b/a Social Athlete ("Social Athlete") and SETH HOLBROOK ("Holbrook") (wherein Social Athlete and Holbrook are collectively referred to hereinafter as "Defendants") and hereby alleges as follows:

### INTRODUCTION

1.     This is an action in law and equity for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, and common law claims of

tortious interference with an advantageous business relationship, defamation, and fraudulent misrepresentation.

2.     The underlying dispute arises out of Defendants' systemic abuse of the DMCA takedown process and the judicial system to secure the removal of social media content that Defendants possess no copyrights or other enforceable legal rights in.

3.     For months, Defendants have successfully (albeit unlawfully) secured the deactivation and suspension of their former clients' revenue-earning social media accounts including, without limitation, Akhile's OnlyFans accounts, via the submission, by and through Defendants' counsel, of false DMCA copyright infringement notices and the filing of sham pleadings wholly unsupported by fact or law. Defendants' misuse of the judiciary and the law to achieve their own unlawful ends have been willful, intentional, and damaging to Akhile, significantly injuring Akhile's sales, profits, and hard-earned reputation and goodwill among consumers and professionals in the industry.

4.     Defendants' knowing, willful, and continued violation of federal and state law has, therefore, necessitated the filing of the instant action.

## **PARTIES**

5.     Plaintiff Mycol Akhile, individually, is a resident of the State of California and is otherwise *sui juris.*

6.     Upon information and belief, Defendant Seth Holbrook, individually, is a resident of the State of Florida and at all times material hereto was residing in Pasco County, Florida, which is located within this judicial district, and is otherwise *sui juris*.

7.     Upon information and belief, Seth Holbrook is the controlling and motivating force behind, and ultimate decision maker for, the decisions and acts made by or on behalf of Seth Holbrook Fitness, LLC. Seth Holbrook is the sole authorized member, registered agent, owner, and CEO of Seth Holbrook Fitness, LLC. *See* **Exhibit A** (true and correct Sunbiz corporate records for Seth Holbrook Fitness, LLC).

8.     Defendant Seth Holbrook Fitness, LLC d/b/a Social Athlete is a Florida limited liability company with a principal place of business at 39939 Pretty Pond Road, Zephyrhills, FL 33540, which is located within this judicial district.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 2201, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because this action arises under the laws of the United States, specifically, 17 U.S.C. § 201 and 17 U.S.C. § 512.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2) and as set forth below.

11.     All conditions precedent to bringing this action have occurred, been performed, or been excused.

## FACTUAL ALLEGATIONS

The Parties' Business Relationship

12.     Holbrook is a bodybuilder and fitness model who, after amassing a large following on social media, launched Seth Holbrook Fitness LLC d/b/a Social Athlete and Raw Aesthetics LLC. *See* **Exhibit A**; **Exhibit B** (true and correct screen capture from the "About Me" page of Defendants' www.sethholbrook.com website).

13.     By and through Social Athlete, Holbrook personally offers and renders production, management, marketing and consulting services to up-and-coming athletes. **Exhibit B**.

14.     Akhile is a Los Angeles-based artist, model, and influencer operating under the professional alias, Mycol Armani.

15.     A significant portion of Akhile's income is derived from the content he publishes on his social media accounts including OnlyFans, TikTok, Instagram, Twitter, and Facebook.

16.     On or around April 19, 2022, Akhile retained the Defendants to help scale Akhile's online business and social media presence by aiding in the creation of social media content, promoting Akhile's products and social media content, and providing consulting services ("the Services").

17.     The Parties executed a Service Contract dated April 19, 2022, a true and correct copy of which is attached hereto as **Exhibit C**.

18.     The Service Contract contains a Section titled "Copyright Ownership" which provides that, "Any and all copyrights which may exist or come into being with

respect to any and all content ***created by COMPANY*** on behalf of the TALENT and/or content created by TALENT ***at the instruction of COMPANY*** shall be the property of COMPANY." *See* **Exhibit C** (wherein "Company" refers to Social Athlete and "Talent" refers to Akhile) (emphasis added).

19.     Content independently created by Akhile, i.e., not at the direction of Social Athlete, remained the sole and exclusive property of Akhile.

20.     In accordance with the terms of the Service Contract, Akhile thereafter published and/or posted social media content he had independently created, i.e., not at the instruction of Social Athlete, ("the Works") on his various social media accounts including his @armaniluxx and @armanidlux OnlyFans accounts ("the OnlyFans Accounts"), as he had previously been doing prior to hiring Defendants.

21.     In or around June of 2022, Akhile terminated the Service Contract with Social Athlete because he was dissatisfied with the quality and nature of the Services.

22.     In response, Defendants commenced a coordinated and targeted assassination of Akhile's brand, reputation, and business.

23.     Defendants submitted multiple copyright infringement notices under the DMCA against the OnlyFans Accounts, resulting in the suspension and deactivation of the OnlyFans Accounts. *See* **Exhibit D** (true and correct copies of the DMCA notices received by Akhile).

24.     The DMCA notices received by Akhile cautioned that "it is the firm policy of OnlyFans to terminate the account of repeat copyright infringers." **Exhibit D**.

25.     With respect to the @armanidlux OnlyFans account, Akhile's former counsel remitted a DMCA counter notification on July 1, 2022, swearing, under penalty of perjury, that the account was removed or disabled as a result of a mistake or misidentification. *See* **Exhibit E** (true and correct copy of the July 1, 2022, DMCA counter notification).

26.     Pursuant to 17 U.S.C. § 512(g)(2)(C), Defendants were afforded ten (10) business days to file an action seeking a court order restraining Akhile from engaging in purportedly infringing activity relating to the material on OnlyFans' system or network.

27.     On July 11, 2022, Defendants filed a three-count complaint in the Circuit Court of the Seventeenth Judicial Circuit In and For Broward County ("First Proceeding"), asserting a demand for injunction, breach of contract, and copyright infringement claims.[1] **Exhibit F** (true and correct copy of the complaint).

28.     The complaint failed to identify the specific copyrighted works that Social Athlete owns, failed to state the registration status of the specific copyrighted works, failed to provide a copy of a registration certificate, and failed to identify the

---

1.     Because federal courts have exclusive jurisdiction over copyright claims, *see* 28 U.S.C. § 1338(a), Defendants' copyright infringement claim was subject to dismissal or removal based on state courts' lack of subject matter jurisdiction.

specific act or acts that Akhile committed in purported violation of any alleged right to a registered copyrighted work.

29.     Moreover, a case number was never assigned to the case and, upon further inquiry and investigation, it was revealed that the filing of the complaint was rejected by the court and never properly filed by Defendants' counsel.

30.     As such, and contrary to Defendants' representations to OnlyFans to the contrary, the First Proceeding was never formally instituted (and certainly not within the requisite 10-day period).

31.     Notwithstanding the foregoing, the damage resulting from the baseless DMCA notice had already been done as the @armanidlux OnlyFans account was nevertheless suspended and/or deactivated by OnlyFans based on Defendants' representations.

32.     On or around August 10, 2022, Defendants submitted another copyright infringement notice under the DMCA, this time with respect to the @armaniluxx OnlyFans account. **Exhibit D**.

33.     Undersigned counsel, on behalf of Akhile, submitted a DMCA counter notification on August 17, 2022. **Exhibit G**.

34.     Pursuant to 17 U.S.C. § 512(g)(2)(C), Defendants were again afforded ten (10) business days to file an action seeking a court order restraining Akhile from engaging in purportedly infringing activity relating to the material on OnlyFans' system or network.

35. On September 2, 2022, and in excess of the ten-day period afforded by OnlyFans, Defendants again filed an identical three-count complaint in the Circuit Court of the Seventeenth Judicial Circuit In and For Broward County ("Second Proceeding"), asserting a demand for injunction, breach of contract, and copyright infringement claims. **Exhibit H** (true and correct copy of the complaint).

36. The complaint again failed to identify the specific copyrighted works that Social Athlete owns, failed to state the registration status of the specific copyrighted works, failed to provide a copy of a registration certificate, and failed to identify the specific act or acts that Akhile committed in purported violation of any alleged right to a registered copyrighted work.

37. The complaints filed in both the First and Second Proceeding are identical form templates, as evidenced by (a) the identical legal and factual allegations asserted in both complaints, and (b) the identical error and mistaken reference to an unknown third-party as the purported defendant in Paragraph 5 of each complaint, i.e., "Defendant Joel Cherry Jr. (Hereinafter 'Defendant') is a U.S. citizen." **Exhibits F, H**.

38. Although a case number was subsequently assigned to the Second Proceeding, namely, Case No. CACE-22-013147, Akhile was not (and has not been, as of the undersigned date) served with the complaint.

39. Notwithstanding the foregoing, the damage resulting from this second baseless DMCA notice had also already been done as the @armaniluxx OnlyFans

account was nevertheless suspended and/or deactivated by OnlyFans based on Defendants' representations.

40.    To date, both OnlyFans Accounts remain suspended, preventing Akhile from actualizing any of the sales, profits, and growth in Akhile's social media following, brand, reputation, and goodwill that Akhile would have inevitably amassed had the OnlyFans Accounts never been wrongfully deactivated.

41.    Moreover, undersigned counsel contacted Defendants' counsel on August 17, 2022, and August 24, 2022, to attempt to amicably resolve the instant dispute but no response was ever received.

42.    The Second Proceeding remains active and pending as of the undersigned date.

Defendants' Established Practice of DMCA Abuse

43.    Based on undersigned's research and investigation, and upon information and belief, Defendants are engaged, and have been engaged in for approximately one year, in a streamlined and coordinated scheme of fraudulently and materially misrepresenting that material or activity by Defendants' former clients (including, without limitation, Akhile) is infringing and violative of the DMCA although such accusations have no reasonable basis in law or fact and are entirely unsupported.

44.    Defendants—by, through, and with the assistance of legal counsel—have filed multiple *identical* form complaints alleging claims of (a) demand for injunction,

(b) breach of contract, and (c) copyright infringement, against former clients. **Exhibit I** (true and correct copies of several of said complaints).

45.     All of said complaints fail to identify the specific copyrighted works that Social Athlete owns, fail to state the registration status of the specific copyrighted works, fail to provide a copy of a registration certificate, and fail to identify the specific act or acts that the defendant committed in purported violation of any alleged right to a registered copyrighted work.

46.     Indeed, it would be difficult for Defendants to do so seeing as a search of the Copyright Records, Official Public Catalog, indicates that neither Social Athlete nor Seth Holbrook Fitness, LLC own any federally registered copyrights. *See* **Exhibit J** and below.

**Public Catalog**

Copyright Catalog (1978 to present)
**Your search found no results. Refer to search examples, check spelling or try another search type.**

**Basic Search**     **Other Search Options**

**Search for:**     social athlete

**Search by:**     Title (omit initial article A, An, The, El, La, Das etc.)
                    Name (Crichton Michael; Walt Disney Company)
**Scroll down for**  Keyword
**Search Hints**     Registration Number (for VAu 598-675 type vau000598675)
                    Document Number (for V2606 P87 type v2606p087)
                    Command Keyword

[THIS SECTION INTENTIONALLY LEFT BLANK]



47.     Upon information and belief, the complaints are filed by Defendants in a pointed attempt to circumvent meritorious DMCA counter notifications submitted by the named defendant (including, without limitation, Akhile) and compel the wrongful suspension, deactivation, and/or removal of social media accounts and content that Defendants have no enforceable copyright or other legal rights in.

48.     As with the First and Second Proceedings, such lawsuits are either never successfully instituted due to what are believed to be intentional filing errors or are eventually dismissed due to lack of service of process. *See* **Exhibit I** and below.

| Caption & Case No. | Court | Disposition |
|---|---|---|
| *Social Athlete d/b/a Seth Holbrook Fitnes, LLC v. Dustin Young* Case No. CACE-22-002873 (Filed on February 24, 2022) | 17th Judicial Circuit Broward County | Disposed. Removed to the United States District Court for the Southern District of Florida (Case No: 22-cv-60556-AHS) where Defendant Dustin Young's motion to dismiss was granted and Social Athlete's complaint was dismissed. |
| *Social Athlete d/b/a Seth Holbrook Fitnes, LLC v. Colin Carpenter* | 17th Judicial Circuit Broward County | Disposed. Case dismissed due to lack of service of process. |

| | | |
|---|---|---|
| Case No. CACE-22-004138 (Filed on March 21, 2022) | | |
| *Social Athlete d/b/a Seth Holbrook Fitnes, LLC v. Rex Campbell* Case No. CACE-22-017520 (Filed on November 29, 2022) | 17th Judicial Circuit Broward County | Pending, awaiting proof of service of process. |
| *Social Athlete d/b/a Seth Holbrook Fitnes, LLC v. Mycol Akhile* Case No. CACE-22-013147 (Filed on September 2, 2022) | 17th Judicial Circuit Broward County | Pending, awaiting proof of service of process. |
| *Social Athlete d/b/a Seth Holbrook Fitnes, LLC v. Adam Coroner* Case No. 22-CA-008311 (Filed on October 4, 2022) | 13th Judicial Circuit Hillsborough County | Pending, but a notice was issued noting that "Your new case could not be processed, the Complaint's heading reflects a county other than Hillsborough, please take the necessary steps to have the case transferred." |

49.     A single case, *Social Athlete d/b/a Seth Holbrook Fitnes, LLC v. Dustin Young*, Case No. CACE-22-002873, was removed to this Court, wherein the Court dismissed Defendants' complaint for failing to provide sufficiently developed factual allegations and legal conclusions in support of the purported claims.

50.     The wrongful and/or improper motivation underlying Defendants' conduct of submitting baseless DMCA notices and filing unsupported and unfounded complaints (including, without limitation, against Akhile and his OnlyFans Accounts)

is further evidenced by Defendants' www.sethholbrook.com website wherein Defendants market, offer for sale, and sell the following "Stolen Content Removal" service which guarantees removal of any purportedly infringing content with a "100% Removal Success Rate". **Exhibit K** and below.



51.     In light of 17 U.S.C. § 512(g)(2)(C) and OnlyFans' (and other service providers') internal policies mandating removal of allegedly infringing content upon the filing of a copyright infringement lawsuit, such a "100% Removal Success Rate" is undoubtedly achieved via the filing of unsupported and unfounded complaints like those identified above.

52.     It is also OnlyFans' policy that any accounts that have been deactivated pursuant to a DMCA notice remain deactivated unless and until the court makes the final judgment in the content creator's favor.

53.     Indeed, on September 6, 2022, OnlyFans indicated in response to the institution of the Second Proceeding, that "the accounts @armaniluxx and @armanidlux have to stay deactivated unless the court makes the final judgment in the content creator's favor." **Exhibit L**.

54.     In this way, Defendants are able to successfully (albeit unlawfully) secure the deactivation and suspension of their former clients' revenue-earning social media accounts and irreparably harm Defendants' former clients including, without limitation, Akhile.

55.     In view of the foregoing, Akhile asserts all of the following claims against both Holbrook and Social Athlete.

## COUNT I – DECLARATORY JUDGMENT
### (28 U.S.C. §§ 2201 *et seq.*)

56.     Akhile repeats and re-alleges paragraphs 1 through 55 as though fully set forth herein.

57.     A substantial, immediate, and real controversy exists between Akhile and Defendants based, in part, on Defendants' material misrepresentations to OnlyFans, and to Florida state courts (specifically, the Seventeenth Judicial Circuit In and For Broward County), that Akhile's @armaniluxx and @armanidlux OnlyFans Accounts infringe upon Defendants' purported copyright rights.

58.     Akhile has already been the subject of two baseless lawsuits, i.e., the First Proceeding which was filed but never instituted, and the Second Proceeding which, as of the undersigned date, is still pending and awaiting proof of service of process.

59.     Akhile's display and publication of the Works, i.e., social media content he independently created, does not amount to copyright infringement because Akhile holds exclusive ownership rights in the Works and because Defendants do not possess a federal copyright registration for the Works, which is a prerequisite to suit.

60.     Defendants have failed to identify the existence of a federal copyright registration for the Works in either the First or Second Proceeding and the Copyright Records, Official Public Catalog, indicate that neither Social Athlete nor Seth Holbrook Fitness, LLC own any federally registered copyrights.

61.     Akhile is entitled to judgment declaring that his publication, use, and display of the Works on the OnlyFans Accounts (and elsewhere) does not infringe, and has not infringed, any copyright(s) of the Defendants.

WHEREFORE, Akhile, by and through the undersigned, hereby respectfully demands declaratory judgment against the Defendants declaring that Akhile's publication, use, and display of the Works (including, without limitation, on the OnlyFans Accounts) does not amount to copyright infringement.

## COUNT II – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP

62.     Akhile repeats and re-alleges paragraphs 1 through 55 as though fully set forth herein.

63.     Akhile enjoys a business relationship with OnlyFans whereby Akhile has the right to publish, post, market, advertise, and sell content on the OnlyFans platform.

64.     Defendants had actual knowledge of the existing business relationship between Akhile and OnlyFans, because (a) the Service Contract expressly referenced that "TALENT [Akhile] is in the business of producing, marketing and selling content on various online platforms, including but not limited to, *TALENT's [Akhile's] own website(s), Instagram, TikTok, Snapchat, OnlyFans.com, and various other social media platforms*" and (b) Defendants submitted at least two DMCA copyright infringement notices directly to OnlyFans demanding the deactivation and suspension of Akhile's OnlyFans Accounts.

65.     Defendants intentionally and unjustifiably interfered with the business relationship by filing DMCA notices with OnlyFans falsely accusing Akhile of infringing Defendants' purported copyright(s). *See* **Exhibit D**.

66.     Based on Defendants' tortious and false accusations that Akhile infringed upon Defendants' purported copyright(s), OnlyFans removed the OnlyFans Accounts, and, upon information and belief, marked Akhile's accounts with an intellectual property policy violation which places the OnlyFans Accounts in jeopardy of being permanently terminated. *See* **Exhibit D** (OnlyFans correspondence warning Akhile that "it is the firm policy of OnlyFans to terminate the account of repeat copyright infringers").

67.     When Akhile attempted to remedy the issue by submitting a DMCA counter notification, Defendants instituted the Proceedings, effectively preventing the OnlyFans Accounts from being reinstated or reactivated.

68.    When Akhile attempted to remedy the issue with Defendants' counsel directly, no response was ever received.

69.    Upon information and belief, Defendants intentionally refused to retract their false DMCA notices and, consequently, the OnlyFans Accounts are still suspended and deactivated and the mark against Akhile's accounts remains.

70.    The continued suspension of the OnlyFans Accounts prevents Akhile from actualizing any of the sales, profits, and growth in Akhile's social media following, brand, reputation, and goodwill that Akhile would have inevitably amassed had the OnlyFans Accounts never been wrongfully deactivated.

71.    Thus, Defendants' tortious interference has caused, and continues to cause, irreparable harm to Akhile.

WHEREFORE, Akhile, by and through the undersigned, hereby respectfully demands judgment against Defendants awarding Akhile damages sustained by reason of Defendants' conduct and adequate to compensate Akhile, including awarding any lost profits, reasonable attorneys' fees, pre-suit costs, and reputational and brand harm caused to Akhile.

## COUNT III – VIOLATION OF 17 U.S.C. § 512(f)

72.    Akhile repeats and re-alleges paragraphs 1 through 55 as though fully set forth herein.

73.    OnlyFans is a provider of online services or network access and/or offers the transmission, routing, or providing of connections for digital online

communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

74. Consequently, OnlyFans is a service provider as that term is defined in 17 U.S.C. § 512(k)(1).

75. In submitting the DMCA notices to OnlyFans, Defendants knowingly, materially represented that the Work on Akhile's OnlyFans Accounts is infringing.

76. In filing the First and Second Proceedings, Defendants, by and through their counsel, knowingly, materially represented that the Work on Akhile's OnlyFans Accounts is infringing.

77. Defendants' material misrepresentations that the Work and/or the OnlyFans Accounts infringe on Defendants' copyright(s) are false and were made with knowledge of their falsity.

78. Specifically, Defendants knowingly and intentionally misrepresented that the Work and/or the OnlyFans Accounts are infringing to successfully (albeit unlawfully) secure the deactivation and suspension of Akhile's revenue-earning social media accounts and irreparably harm his sales, profits, and growth in social media following, brand, reputation, and goodwill that Akhile would have inevitably amassed had the OnlyFans Accounts never been wrongfully deactivated.

79. As a direct and proximate result of Defendants' knowing and material misrepresentations which OnlyFans relied on, OnlyFans suspended, deactivated, and disabled access to Akhile's OnlyFans Accounts.

80. To date, the OnlyFans Accounts remain suspended pending a final judgment in the content creator's favor.

81. The continued suspension of the OnlyFans Accounts prevents Akhile from actualizing any of the sales, profits, and growth in Akhile's social media following, brand, reputation, and goodwill that Akhile would have inevitably amassed had the OnlyFans Accounts never been wrongfully deactivated.

82. Thus, Defendants' knowing and material misrepresentations have caused, and continue to cause, irreparable harm to Akhile.

WHEREFORE, Akhile, by and through the undersigned, hereby respectfully demands judgment against Defendants awarding Akhile damages sustained by reason of Defendants' conduct and adequate to compensate Akhile, including awarding any lost profits, reasonable attorneys' fees, pre-suit costs, and reputational and brand harm caused to Akhile.

## COUNT IV – COMMON LAW DEFAMATION

83. Akhile repeats and re-alleges paragraphs 1 through 55 as though fully set forth herein.

84. As set forth in greater detail above, the DMCA notices submitted by Defendants to OnlyFans falsely alleged that the Work and the OnlyFans Accounts infringed upon Defendants' copyright(s) ("False Statements").

85. Defendants also asserted the False Statements in the complaints filed in the First and Second Proceedings.

86.    The False Statements are false, defamatory, disparaging, and portray Akhile in a severely negative and false light.

87.    Defendants published and distributed, and continue to publish and distribute, the False Statements on OnlyFans.com and in the Seventeenth Judicial Circuit, In and For Broward County. *See, e.g.*, **Exhibits D, F, H**.

88.    Because the complaints filed in the First and Second Proceedings are public record, any member of the public can readily access, view and read the False Statements.

89.    Moreover, the False Statements were disseminated to non-party OnlyFans via the OnlyFans.com website.

90.    At the time that Defendants wrote, disseminated, and published the False Statements in the DMCA notices and in the Proceedings, Defendants had actual knowledge that the False Statements were false, or, at a minimum, Defendants recklessly disregarded the falsity of the False Statements.

91.    The False Statements have caused Akhile irreparable injury including, without limitation, damage to Akhile's character, reputation, business, brand, goodwill, social media following, sales, and profits and will continue to cause Akhile irreparable injury for as long as the False Statements remain accessible to the public.

WHEREFORE, Akhile, by and through the undersigned, hereby respectfully demands judgment against Defendants awarding Akhile damages sustained by reason of Defendants' conduct and adequate to compensate Akhile, including awarding any lost profits, reasonable attorneys' fees, pre-suit costs, and reputational and brand harm

caused to Akhile, and an order preliminarily and permanently enjoining and restraining Defendants, their agents, servants, employees, principals, and directors, attorneys, parents and subsidiaries, related companies, and all persons acting for, with, by, through or under them, and each of them from publishing, distributing, disseminating, or displaying the False Statements.

## COUNT V – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.204)

92.     Akhile repeats and re-alleges paragraphs 1 through 55 as though fully set forth herein.

93.     Based on publicly available court records, and upon information and belief, Defendants are engaged, and have been engaged in for approximately one year, in a streamlined and coordinated scheme of fraudulently and materially misrepresenting that material or activity by Defendants' former clients (including, without limitation, Akhile) is infringing and violative of the DMCA although such accusations have no reasonable basis in law or fact and are entirely unsupported.

94.     Defendants have instituted multiple meritless copyright infringement lawsuits in Florida state courts against Defendants' former clients (including, without limitation, Akhile) and, upon information and belief, have submitted multiple unfounded DMCA notices to OnlyFans and other service providers.

95.     Defendants—by, through, and with the assistance of legal counsel—have filed multiple *identical* form complaints alleging claims of (a) demand for injunction,

(b) breach of contract, and (c) copyright infringement, against former clients (including, without limitation, Akhile).

96.    All of said complaints (including, without limitation, those filed in connection with the First and Second Proceeding) fail to identify the specific copyrighted works that Social Athlete owns, fail to state the registration status of the specific copyrighted works, fail to provide a copy of a registration certificate, and fail to identify the specific act or acts that the defendant committed in purported violation of any alleged right to a registered copyrighted work.

97.    Upon information and belief, the complaints are filed by Defendants in a pointed attempt to circumvent meritorious DMCA counter notifications submitted by the named defendant (including, without limitation, Akhile) and compel the wrongful suspension, deactivation, and/or removal of social media accounts and content that Defendants have no enforceable copyright or other legal rights in.

98.    As with the First and Second Proceedings, such lawsuits are either never successfully instituted due to what are believed to be intentional filing errors or are eventually dismissed due to lack of service of process.

99.    Notwithstanding the foregoing, the allegedly infringing content (e.g., the OnlyFans Accounts) is nevertheless removed or disabled as a result of Defendants' conduct and material misrepresentations.

100.    Defendants' foregoing conduct gives rise to a general violation of FDUTPA, namely, Fla. Stat. § 501.204, and constitutes an unfair and deceptive trade practice.

22

101.   Akhile, and former clients of Defendants' who are similarly situated, have been and continue to be irreparably harmed by Defendants' conduct and material misrepresentations.

102.   Specifically, Defendants' conduct prevents Akhile from actualizing any of the sales, profits, and growth in Akhile's social media following, brand, reputation, and goodwill that Akhile would have inevitably amassed had the OnlyFans Accounts never been wrongfully deactivated as a result of Defendants' unfair and deceptive trade practices.

103.   Thus, Defendants' unlawful conduct and activity has caused, and continues to cause, irreparable harm to Akhile.

WHEREFORE, Akhile respectfully requests this Court enter judgment for Akhile on all counts and the following forms of relief:

(a) Statutory surcharge and actual damages, as provided under Fla. Stat. § 501.211(2), for the FDUTPA violations committed by Defendants;

(b) An injunction prohibiting Defendants from engaging in further activities that are in violation of FDUTPA;

(c) Reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.211(2); and,

(d) Any other relief that this Court deems appropriate and just under the circumstances.

## COUNT VI – FRAUDULENT MISREPRESENTATION

104.   Akhile repeats and re-alleges paragraphs 1 through 55 as though fully set forth herein.

105.   Defendants knowingly and intentionally made the False Statements concerning a material fact, namely, that the Work and the OnlyFans Accounts infringed upon Defendants' copyright(s).

106.   Defendants knew the False Statements were false when they made them or made the False Statements knowing they did not know whether the statements were true or false.

107.   Defendants intended that OnlyFans would rely on the False Statements and remove, suspend, disable, and/or deactivate the OnlyFans Accounts.

108.   OnlyFans actually relied on the False Statements in removing, suspending, disabling, and/or deactivating the OnlyFans Accounts.

109.   The OnlyFans Accounts were removed, suspended, disabled, and/or deactivated as a result of the False Statements advanced by Defendants in the DMCA notices and in the First and Second Proceeding.

110.   Defendants' False Statements were the legal cause of loss, injury, and/or damage to Akhile.

111.   Specifically, Defendants' conduct prevents Akhile from actualizing any of the sales, profits, and growth in Akhile's social media following, brand, reputation, and goodwill that Akhile would have inevitably amassed had the OnlyFans Accounts never been wrongfully deactivated as a result of Defendants' False Statements.

112.    Thus, Defendants' False Statements have caused, and continue to cause, irreparable harm to Akhile.

WHEREFORE, Akhile, by and through the undersigned, hereby respectfully demands judgment against Defendants awarding Akhile damages sustained by reason of Defendants' conduct and adequate to compensate Akhile, including awarding any lost profits, reasonable attorneys' fees, pre-suit costs, and reputational and brand harm caused to Akhile.

## DEMAND FOR JURY TRIAL

Plaintiff, MYCOL AKHILE, demands a trial by jury on all issues so triable as a matter of right.

Dated: February 1, 2023                    Respectfully submitted,

*/s/ Mark C. Johnson*
Mark C. Johnson (FBN: 84365)
Email: MJ@JohnsonDalal.com
JOHNSON | DALAL
*Attorneys for Plaintiff*
111 N. Pine Island Road
Suite 105
Plantation, Florida 33324
Telephone: (954) 507-4500
Facsimile: (954) 507-4502