# EXHIBIT A

screenshot-search.sunbiz.org-2022.12.29-20_30_40
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?
inquirytype=EntityName&directionType=Initial&searchNameOrder=SETHHOLBROOKFITNESS%20L210003675540&aggregateId=flal-l21000367554-8cc307f7-9f4f-
44ea-88f7-0960cddc6582&searchTerm=seth%20holbrook%20fitness&listNameOrder=SETHHOLBROOKFITNESS%20L210003675540
29.12.2022



# EXHIBIT B

screenshot-sethholbrook.com-2022.12.28-12_22_21
https://sethholbrook.com/pages/about-me
28.12.2022

Thanks for visiting!

Search   Currency   USD    Log in   Create account   0 Cart

# SETH HOLBROOK

HOME   PRESS/MEDIA   BOOK ME!   FITNESS TRAINING   SOCIAL ATHLETE   ABOUT   SOCIAL MEDIA GROWTH   APPAREL

HOME  ›  ABOUT ME

## ABOUT ME

**I Birth**

I was born April 19th in Baltimore, Maryland. As a kid I started playing sports and always loved being active and staying fit. I never dreamed it would turn into the journey that it has today. This is how my story began.

**Elementary**

Growing up I started off playing soccer and basketball in my elementary years. I knew I wanted to be the best I could be at a young age so I started working out every day at the age of 10. I originally started off with a hundred pushups and a hundred sit-ups every night and worked up from there.

**Middle/High School**

In middle school I found the three sports that I truly loved, football, wrestling, and track. In 8th grade, at age 13, I started lifting weights daily on top of my home workouts. By sophomore year in high school, at age 15, I was a starting State Champion on the football field, an All-State wrestler, and All-State track runner. At this time I was cranking out 2,000 push-ups and hundreds of sit-ups/pull-ups a night. This is the same year I got my first and only gym membership at Golds Gym. Still a member to this day.

**College**

I was All-State in all sports throughout the of rest of high school and ended up deciding to pursue football in college in the NCAA. I played 4 years as fullback for Shepherd University in West Virginia. We went to the National Championship my senior year. At age 19 I posted my first fitness video on YouTube and it got about 50k views. That's when I decided to pursue aesthetics. Over the years I competed in a few NPC shows around Baltimore for Men's Physique but never saw much success. Instead I decided to focus on growing my brand online.

Social Media has been a huge part of my life and success. Since age 17, I managed to hit over a million views on YouTube, millions of loops on Vine, and over 500,000 followers between Instagram, Tumblr, and Twitter. At age 21, I got signed to my first record label at age 22, I was being flown across the nation for photoshoots.

**Career**

I graduated from Shepherd University in May 2017. Around the same time I launched my 2 companies, Seth Holbrook Fitness LLC. and Raw Aesthetics LLC. Since then the ball's been rolling pretty quickly.

What started off as a few standard photoshoots quickly turned into me walking in the worlds biggest swimwear fashion week, being featured on FashionTV with Nick Cannon, and getting published in The Daily Mail, Miami Herald, CNN News 18, Channel Nine News, etc.

This ultimately led to me walking in New York Fashion Week, during which I started working with Jason Derulo and Antonio Brown's luxury clothing line LVL XIII.
I've since been published in DNA Magazine, Adon Magazine, and many others. Watch my journey on YouTube!

**Summer 2018**

The summer started for me during the BET Awards Weekend fashion show in Downtown Los Angeles when I walked for celebrity designer Martez Malone and his brand YEKIM before closing out the night with VH1 star Angel Brinks fashion line.

Then back to Miami for an early Swim Week where I walked the runway for Saks Fifth Avenue and their Vilebrequin collection, Stello by Michael Costello, Trina Turk & Mr.Turk, OMG, and many others highlighted in Vogue! I was also featured in Elle, Cosmopolitan Magazine, and USA Today while appearing on FashionTV, FNL Network, and starring in the Amazon Prime Video series Model Monday!

It's now officially been one year since I started modeling and I can't believe the journey it's been! NYFW 2018 was a blast I walked for a handful of designers including Argyle Grant by Celebrity Reporter Dean McCarthy and had the awesome pleasure working alongside Latin Sensation Recording Artist Nicky Jam opening night! Yahoo! also featured me alongside Madeline Stuart during my NYFW appearance!

My ultimate goal is to one day walk the runway in Europe, to walk in London, Paris, or Milan Fashion Week would be a dream come true! Most recently I was featured on Fox5 New York for an a project called Bullies and Biceps by Mike Ruiz and New York Bully Crew!

**What is Seth Holbrook Fitness?**

Seth Holbrook Fitness is a brand. A brand that stands for goals, determination, and hard work. From building your dream physique, becoming a sponsored athlete, to building your own personal brand, I'm here to help each and every one of you accomplish your goals and ambitions. We all have the ability to make our dreams come true, never forget that.

I'm a lifetime natural and I'm living proof that you can be anything you want. You don't need drugs, and you don't need performance enhancers. All you need is the desire to be great and the hard work to back it up. I have faith in each and every one of you guys.

Stay natty brahs, we're all gonna make it.

**Height- 5'11**
**Weight- 200 lbs**
**Body Fat- 4.9% (Hydrostatic)**

**Max Lifts-** *Stopped maxing at age 18, I rep these out but don't go any heavier.*
**Hang Clean: 300 lbs (136 kg)**
**Bench Press: 405 lbs (183 kg)**
**Back Squat: 500 lbs (226 kg)**

Contact Us



BECOME A MEMBER!

Subscribe and be the first to hear about my exclusive
offers and latest arrivals!

CUSTOMER CARE

Get answers to your questions!

Search

GET IN TOUCH

Contact Me

Accepted Payments

© 2022, Seth Holbrook
Powered by Shopify

# EXHIBIT C



### Service Contract

This Service Contract ("Contract"), dated as of 19th day of April, 2022, is between Mycol Armani (The "TALENT") and Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE ("COMPANY") and shall be collectively referred to as the "PARTIES."

**Recitals:**

WHEREAS the TALENT is in the business of producing, marketing and selling content on various online platforms, including but not limited to, TALENT's own website(s), Instagram, TikTok, Snapchat, OnlyFans.com, and various other social media platforms and

WHEREAS COMPANY is experienced and skilled in social media marketing, promotion, content creation, videography, photography, video and photo editing, social media management, business consultation, paid content deployment, paid content creation, paid content sales, and the general operation of subscription platforms including but not limited to TIKTOK, YouTube, Facebook, Instagram, Snapchat, Patreon, OnlyFans.com and its accompanying App. ("Only Fans") and other platforms; and

WHEREAS the TALENT wishes to engage Company as a full-service production, management, marketing and consulting company for the TALENT for the purpose of providing the services as more full set forth herein.

WHEREAS, COMPANY offers the SERVICES listed herein, TALENT accepts the same and both parties provide consideration, specifically, TALENT agrees to pay the fees contained herein and COMPANY agrees to perform the SERVICES herein.

The PARTIES agree as follows:

### 1. DESCRIPTION OF SERVICES AND TALENT OBLIGATIONS

**(a) Engagement.** The TALENT hereby retains COMPANY to provide, and COMPANY agrees to provide the SERVICES described in subsection (b) below. TALENT agrees that this is an exclusive CONTRACT and TALENT may not hire any other Company, individual, or entity to perform the same SERVICES as COMPANY.

**(b) Services.** COMPANY shall use reasonable commercial efforts, in good faith to perform the following (the "SERVICES"), in a timely and professional manner, in accordance with standards prevailing in the TALENT's and COMPANY's industry, and in accordance with applicable laws, rules and regulations:

    a.  Assist and guide Talent on scaling their online business and social media presence and aid in facilitation of all content that is posted on social media including, but not limited to, subscription platforms such as OnlyFans.com, Patreon, or any other Platform that PARTIES are now aware of or become aware of, by providing practical advice to TALENT.

    b.  COMPANY will work to assist TALENT with promoting the products and content TALENT offers on their personal site(s), social media, OnlyFans.com, and any other Platform that PARTIES are now aware of or become aware of and decide to use.

    c.  Company will regularly consult with TALENT on growing their online business, social media presence, and on what content TALENT should produce in order to fulfill customer orders on their website(s), platform(s), and OnlyFans.com. In situations where customer orders pertain to professionally produced content, COMPANY will assist TALENT in producing such content by performing filming, drafting and editing. In the event that the requested service exceeds the capability of COMPANY, COMPANY may, at its discretion, hire third parties to complete this function and will be entitled to reimbursement by the TALENT for the costs incurred.

    d.  COMPANY will use good faith efforts to assist in the removal of any and all unauthorized publication of works produced as a result of this CONTRACT.

    e.  In the performance of the SERVICES, COMPANY will serve the TALENT in good faith, ensuring, within its reasonable control, that it is:

        i.  protecting the TALENT's interests consistent with the purpose of this CONTRACT;

        ii.  observing all applicable laws related to the TALENT's activities; and

        iii. acting in accordance with professional production and management practices;

    f.  COMPANY will use good faith efforts to communicate regularly with the TALENT concerning progress COMPANY has made in performing the SERVICES.

**(c) TALENT's Obligations.** The TALENT shall comply with all applicable laws, rules and regulations applicable hereto. The TALENT shall not engage in any activity or post any content that:

   a. Constitutes or promotes illegal activity or violates any applicable laws or regulations:
   b. infringes, violates or misappropriates any third-party intellectual property rights, including copyright, trade secrets or trademarks, publicity and/or privacy rights, is libelous, defamatory, abusing, harassing, or threatening, or in any way causes legal or actual damage to others;
   c. contains any obscene, racist or otherwise offensive material or language as defined by such platforms terms and conditions, guidelines, and the like;
   d. exploits or harms children, directly or indirectly, including by exposing them to inappropriate material or asking them for any personal-information or remuneration;
   e. links to any third-party sites or services that would violate the standards and terms contained within this CONTRACT.
   f. The TALENT shall not advertise other paid media outlets(i.e. MyfreeCams, Fan Centro or Paid Snap) using their OnlyFans account during the term of this CONTRACT unless authorized in writing by COMPANY.
   g. The TALENT shall not engage in deceptive trade practices or otherwise violate Federal Trade Commission Regulations.
   h. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.
   i. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.

## 2. COMPENSATION

**(a) Management Fee.** During the Term, COMPANY shall be entitled to a fee equal to 20% (Twenty percent) of the gross revenue (pre-tax, pre-costs, and without deduction of any third party processors or OnlyFans fees directly or any other commissions or fees) whether fixed or contingent, received or accrued. Compensation and any other form of remuneration or revenue in whatever form including without limitation bonuses, deferments, participations and the like, contingent or otherwise, sponsorships, advertising, merchandise, commercial tie-ins, Endorsements, or any other opportunity to earn income arising from, or otherwise in connection with the SERVICES herein (collectively, the "Compensation"), are payable as received or accrued.

COMPANY shall further be entitled to its fee with respect to revenue received after the expiration of the Term if it is generated prior to expiration

of the Term. It is agreed that all revenue received by TALENT within 30 days after expiration of the Term shall be attributed to COMPANY. If the TALENT's revenue increases by 50% or more during Term, the Term shall be automatically extended for an additional twelve (12) months from the would be end of the term contemplated under this CONTRACT. COMPANY, in its sole discretion, may choose not to renew. However, if no objection by COMPANY is made as to the renewal, all other terms herein shall remain in effect unless modified by subsequent writing and signed by both PARTIES.

**(b) Payment of the Fee.** The TALENT agrees to irrevocably direct third-parties as outlined below and to irrevocably authorize COMPANY on the TALENT's behalf to either:

    **a.** have the third parties pay to COMPANY the applicable Fee set forth above directly, deduct such amounts paid to Company from amounts of Compensation payable to the TALENT and then pay the TALENT the balance of the Compensation directly from the third parties, if the third parties so agree, **OR**

    **b.** if third parties do not so agree or are otherwise unable to, then it shall be the sole responsibility of the TALENT to, and TALENT agrees to, pay the Fee due to COMPANY on such compensation (as set forth above) immediately upon the earlier of receipt or accrual of the compensation no later than the 3rd of each month. TALENT shall send proof of monthly revenue no later than the 28th of each month with the 20% fee not then paid and COMPANY shall invoice the TALENT for such amounts but such invoice shall not be a condition precedent to the obligation to remit the Fee to COMPANY.

## 3. TERM AND TERMINATION

**(a) Initial Term and Automatic Subsequent Terms.** This CONTRACT is effective as of the date written above and shall continue for a term of one (1) year (the "Initial Term"), provided that if TALENT is entitled to Compensation of fifty thousand (50,000) dollars or more during the Initial Term or Revenue is increased by more than 50% as outlined above, the Initial Term shall be automatically extended for an additional period of twelve (12) months. If TALENT is entitled to Compensation of two hundred thousand ($200,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of two (2) years. If TALENT is entitled to Compensation of one million (1,000,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of three (3) years. Each extension shall be considered an "Additional Term"

Unless the Talent gives written notice to Company at least ninety (90) days before the end of the Initial Term or Additional Term, as applicable, this CONTRACT will renew automatically for additional, successive one (1) year

DocuSign Envelope ID: C290B6B6-E929-47B0-8E7D-3GB47A99DC2B

periods (each, an "Additional Term" and together with the Initial Term, collectively, the "Term").

**(b) Termination.** This CONTRACT may be terminated immediately and without notice upon discretion by COMPANY, with or without cause WITHOUT REMEDY TO TALENT, and may be terminated by Talent on ninety (90) days prior written notice for a material breach of this CONTRACT. TALENT shall cause notice upon COMPANY in writing describing the material breach with sufficient detail so as to allow COMPANY to correct the breach. COMPANY shall then have thirty (30) days from proper notice to correct alleged breach. If breach is cured, TALENT shall not be entitled to freely terminate this CONTRACT without consequence. In the event of early Termination by TALENT, compensation due to COMPANY shall continue to be paid until what would be the end of the Initial or additional Term but for the termination, whichever is later. This compensation shall be projected based on the highest month of income then achieved and multiplied by the number of months in the term and is due immediately. Example of this calculation is provided in section 12(b). If the projected value is lower than the actual value, TALENT shall be required to remit payment based on the actual amount as received or accrued but offset by the prior projected payment.

## 4.  NATURE OF RELATIONSHIP

**(a) Independent Contractor.** The relationship of the parties under this CONTRACT is one of independent contractors, and no joint venture, partnership, agency, employer-employee, or similar relationship is created in or by this CONTRACT. Neither party may assume or create obligations on the other party's behalf, and neither party may take an action that creates the appearance of such authority, EXCEPT, COMPANY shall have the requisite authority to carry out its duties under this CONTRACT. TALENT is responsible for paying their own tax obligations created from the execution of this CONTRACT.

**(b) Control.** Company has the sole right to control and direct the means, details, manner, and method by which the SERVICES will be performed, and the right to perform SERVICES at any time, place, or location. COMPANY shall perform the SERVICES and TALENT is not required to hire, supervise, or pay any assistants to help COMPANY with respect thereto. Further TALENT shall not be permitted to hire, supervise, or pay any assistants to help COMPANY with respect thereto without prior written approval from COMPANY.

## 5.  TALENT'S INTELLECTUAL PROPERTY

**(a) Reproduction and Distribution.** TALENT grants COMPANY a NON-EXCLUSIVE irrevocable license so that COMPANY may use, reproduce, and distribute the TALENT's service marks, trademarks, and trade names, or any other intellectual property belonging to TALENT (collectively the "TALENT MARKS") in connection with the performance of the SERVICES. Sole license in this section is intended to mean that, other than TALENT, COMPANY shall be the sole party with authority to use TALENT's intellectual property.

**(b) Ownership Retention.** Any goodwill or other value generated or received from the use contemplated under 5(a) will accrue to the TALENT and TALENT shall remain the sole owner of the TALENT MARKS. COMPANY may not engage in activities or commit acts, directly or indirectly, that may contest, dispute, or otherwise impair the TALENT's interest in the TALENT MARKS. COMPANY may not apply for, acquire, or claim any interest in any TALENT MARKS, or other intellectual property that may be confusingly similar to any of the TALENT MARKS.

(c) **Copyright Ownership.** Any and all copyrights which may exist or come into being with respect to any and all content created by COMPANY on behalf of the TALENT and/or content created by TALENT at the instruction of COMPANY shall be the property of COMPANY. To the fullest extent permitted by law, TALENT hereby assigns any copyright which now exists and agrees to assign copyright he/she may acquire in any content created or posted on social media or online platforms to the COMPANY for the duration of the copyright and any extensions thereof. TALENT agrees to execute all necessary documents including a power of attorney to complete the transfer and assign any copyright interest of TALENT in content produced by COMPANY to COMPANY. It is expressly agreed that works created by COMPANY under this CONTRACT shall belong solely to COMPANY. A failure to execute necessary documents under this provision by TALENT shall be considered a breach and liquidated damages of $25,000 per occurrence shall be paid.


## 6. CONFIDENTIAL INFORMATION

**(a) TALENT's Confidential Information Defined.** During the Term, COMPANY may have access to or receive certain information of or about the TALENT that the TALENT designates as confidential in writing or that, under the circumstances surrounding disclosure ought to be treated as confidential, in the discretion of the COMPANY, by the COMPANY. This shall be referred to as "Confidential Talent Information". Confidential Talent Information includes identifying information relating to the TALENT or its current or proposed business, products, endorsements, sponsorships, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media.

**(b) COMPANY's Handling of Confidential Information.** COMPANY will treat the Confidential Talent Information as confidential, meaning, it will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT. In addition, COMPANY shall use reasonable care and diligence to prevent the unauthorized use or disclosure of such information by COMPANY's agents or employees.

**(c) Limitations of Obligations under this section.** The obligations and restrictions in this section do not apply to that part of the Confidential Talent Information that: (i) was or becomes publicly available other than as a result of a disclosure by COMPANY in violation of this CONTRACT; (ii) was or becomes available to COMPANY on a nonconfidential basis before its disclosure to COMPANY by the TALENT, but only if: (1) the source of such information is not bound by a confidentiality CONTRACT with the TALENT or is not otherwise prohibited from transmitting the information to COMPANY by a contractual, legal, fiduciary, or other obligation; and (2) COMPANY provides the TALENT with written notice of its prior possession either (I) before the effective date of this CONTRACT or (II) if COMPANY later becomes aware (through disclosure to COMPANY) of any aspect of the Confidential Talent Information as to which COMPANY had prior possession, promptly on COMPANY so becoming aware; (iii) is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, COMPANY shall: (1) provide the TALENT with prompt notice of these requests or requirements before making a disclosure so that the TALENT may seek an appropriate protective order or other appropriate remedy; and (2) provide reasonable assistance to the TALENT in obtaining any protective order. If a protective order or other remedy is not obtained or the TALENT grants a waiver under this CONTRACT, COMPANY may furnish that portion (and only that portion) of the Confidential Talent Information that is, in the written opinion of counsel reasonably acceptable to the TALENT or that COMPANY is legally compelled or otherwise required to disclose. However, COMPANY shall make reasonable efforts to obtain reliable assurance that confidential treatment will be afforded to any part of the Confidential Talent Information disclosed in this way or was developed by COMPANY independently without breach of this CONTRACT.

**(d) COMPANY's Confidential Information Defined.** During the Term, the TALENT may have access to or receive certain information of or about COMPANY that COMPANY designates as confidential or that, under the circumstances surrounding disclosure ought to be treated as confidential by the Talent ("Confidential Company Information"). Confidential Company Information includes but is not limited to advice given to TALENT in the performance of COMPANY's SERVICES, information relating to COMPANY or its current or proposed business, promotion techniques, financial statements, budgets and projections, customer identifying information,

DocuSign Envelope ID: C290B6B6-5929-47B9-8E7D-3GB47A99DC2B

employers, consultants, vendors, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The TALENT will treat the Confidential Company Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT.

**(e) TALENT's Handling of COMPANY Confidential Information.** TALENT shall use due care and diligence to prevent the unauthorized use or disclosure of such information. For the avoidance of doubt, the TALENT shall treat this CONTRACT as Confidential Company Information.

**(f) Liquidated Damages.** The parties agree that in the event of a breach of the confidential provisions, it would be impracticable and extremely difficult to ascertain the amount of actual damages or fix actual damages. Therefore, it is agreed that in the event of such a breach, the TALENT shall pay, as liquidated damages, and not as penalty, the sum of Twenty-Five Thousand Dollars ($25,000.00) for each breach. Because the injury or injuries that the COMPANY may sustain by reason of the breach may not be readily ascertainable and not easily proved, the foregoing amount is understood and agreed by the parties as reasonable liquidated damages and is intended as compensation and not as a penalty for the injury or injuries suffered and the loss incurred because of such a breach. In an action initiated by COMPANY to enforce any of the provisions of this CONTRACT or to seek damages for breach of the provisions of this CONTRACT, the COMPANY shall be entitled to recover reasonable attorney's fees.

## 7. FORCE MAJEURE

(a) If the TALENT fails, refuses or is unable for any reason whatsoever, which cannot be overcome by due diligence, to render services hereunder or if production of the TALENT's services is interrupted or materially interfered with because of any force majeure events (e.g., any labor dispute, strike, lock-out, fire, war, act-of-God, epidemic, pandemic, governmental action or proceeding, injunction, illness, disability, death or other material interference with the production of the Talent's services or any other event beyond the Talent's and/or Company's control, the Term of this CONTRACT shall be extended for by a period equal to the duration of any such failure, refusal, or inability or the occurrence of any of the foregoing events. Either party shall be excused from such performance to the extent that either party's respective obligations are necessarily prevented, hindered or delayed during the continuance of any such happening or event and this contract shall be deemed suspended except to the extent that the CONTRACT may still be performed, including payment of the fee to COMPANY. Strictly economic conditions may not be used in excusing obligations arising herein.

## 8. REPRESENTATIONS AND WARRANTIES

(a) **TALENT's Representations and Warranties.** The TALENT represents and warrants as follows: (i) that the TALENT has the right to enter into this CONTRACT and that the consent of no other party is necessary with respect thereto; and (ii) that the TALENT is not subject to any conflicting obligations or disabilities, which will prevent or interfere with the execution and performance of this CONTRACT.

(b) **COMPANY's Representations and Warranties.** The COMPANY makes no warranties or representations beyond what is stated within this CONTRACT. Specifically, COMPANY makes no warranty or representation with respect to the amount of compensation that The TALENT will generate in connection with COMPANY's SERVICES pursuant to this CONTRACT and nothing contained herein shall be construed to obligate COMPANY to take any further action to maximize such compensation. COMPANY only warrants that it will provide, in its best judgement, advice to accomplish the SERVICES in 1(b). Nothing contained in this CONTRACT shall be construed as creating a fiduciary relationship between COMPANY and TALENT.

## 9. INDEMNITY

(a)    **General.** THE TALENT SHALL INDEMNIFY AND HOLD HARMLESS COMPANY, ITS PARENT, SUBSIDIARIES, SUCCESSORS, LICENSEES AND ASSIGNS AND ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, TRUSTEES OR REPRESENTATIVES AGAINST ANY AND ALL LIABILITY, DAMAGES, COSTS AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE OUTSIDE ATTORNEYS' FEES AND COSTS, IN CONNECTION WITH ANY THIRD PARTY CLAIM OR ACTION ARISING OUT OF THE UNCURED MATERIAL BREACH OF ANY OF THE TALENT'S REPRESENTATIONS, WARRANTIES, CONTRACTS, UNDERTAKINGS OR CERTIFICATIONS HEREUNDER, INCLUDING BUT NOT LIMITED TO A BREACH BY THE TALENT OF THE CONFIDENTIALITY AND NON-DISCLOSURE PROVISIONS, OR MATERIAL SUPPLIED TO COMPANY BY THE TALENT, OR MATERIAL INCORPORATED BY COMPANY ON BEHALF OF OR AT THE REQUEST OF THE TALENT IN ANY PRODUCTION, PHOTO SHOOT, ETC. FOR USE IN THE PERFORMANCE OF THE TALENT'S SERVICES HEREUNDER; OR THE DEVELOPMENT, PRODUCTION, ADVERTISING, PROMOTION, DISTRIBUTION AND/OR EXPLOITATION OF THE TALENT'S CONTENT OR ELEMENTS THEREOF OR ANCILLARY THERETO. TALENT EXPLICITLY AGREES TO INDEMNIFY COMPANY IN THE EVENT THAT TALENT PROVIDES INTELLECTUAL PROPERTY TO COMPANY THAT TALENT IS NOT AUTHORIZED TO PROVIDE EVEN IN THE PRESENCE OF NEGLIGENCE ON THE PART OF THE COMPANY IN USING, POSTING, OR PRODUCING IT ANY WAY. TALENT FURTHER AGREES TO

INDEMNIFY COMPANY IN THE EVENT THAT POSTS OR THE LIKE VIOLATE APPLICABLE LAWS OR REGULATIONS INCLUDING BUT NOT LIMITED TO THE FEDERAL TRADE COMMISSION AND STATE LAWS AND CAUSES DAMAGES, INCLUDING THE COST TO DEFEND. THIS INDEMNIFICATION BY TALENT ALSO COVERS IMPROPER SALES TO MINORS.

**(b)** **Retention Of Control & Indemnity.** COMPANY AND THE TALENT SHALL, UPON PRESENTATION OR INSTITUTION OF ANY CLAIM OR ACTION COVERED BY THE FOREGOING INDEMNITY, PROMPTLY NOTIFY THE OTHER OF THE CLAIM OR ACTION, GIVING THE DETAILS THEREOF. ALL ASPECTS OF THE DEFENSE OF SUCH CLAIMS OR ACTIONS, WHETHER AS PART OF ANY LITIGATION, NEGOTIATION OR OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY DECISION REGARDING SETTLEMENT), SHALL BE CONTROLLED BY COMPANY. COMPANY SHALL BE FREE TO USE COUNSEL OF COMPANY'S CHOICE IN CONNECTION THEREWITH. COMPANY'S CONTROL SHALL NOT DIMINISH THE TALENT'S OBLIGATIONS UNDER PARAGRAPH 9 (A) ABOVE. THE TALENT SHALL REASONABLY COOPERATE IN THE DEFENSE OF ANY CLAIM OR ACTION FOR WHICH INDEMNIFICATION IS PROVIDED HEREUNDER AND SHALL HAVE THE RIGHT (AT THE TALENT'S EXPENSE) TO HAVE COUNSEL PRESENT IN CONNECTION THEREWITH, PROVIDED SUCH COUNSEL FULLY COOPERATES WITH COMPANY'S COUNSEL AND DOES NOT INTERFERE WITH THE REASONABLE HANDLING OF THE CLAIM OR ACTION BY COMPANY. COMPANY SHALL NOT SETTLE ANY SUCH CLAIM(S) ADVERSE TO THE TALENT WITHOUT THE TALENT'S PRIOR WRITTEN APPROVAL AND SAID APPROVAL MAY NOT BE UNREASONABLY WITHHELD.

## 10.   ASSIGNMENT

(a)   **General**. COMPANY may unilaterally assign, license and/or delegate this CONTRACT (in whole or in part) to any entity, individual, parent, subsidiary or affiliated corporation of Company, or to any entity with or into which COMPANY merges or consolidates, or which succeeds to all or a substantial portion of COMPANY's assets. This CONTRACT and any or all of said rights, obligations, options, privileges and/or services shall inure to the benefit of and may in turn be freely licensed or assigned by, any such assignee, successor, transferee or delegate. The services to be rendered by the TALENT hereunder are personal to the TALENT and of the essence of this CONTRACT. Neither this CONTRACT nor any of the TALENT's rights or obligations hereunder may be assigned, delegated or otherwise transferred by the TALENT; EXCEPT that the TALENT may assign the right to receive the Compensation due from COMPANY at any

time. Any such assignment shall at all times be subject to all of COMPANY's rights hereunder. Any assignment shall be evidenced in writing and provided to the other party promptly.

## 11. NOTICES

(a)     **General.** Unless otherwise provided herein, all notice from the TALENT shall be in writing and shall be sent to the address set forth below (subject to changes of which the parties are notified in writing). Notices from TALENT shall be given by registered or certified mail (postage prepaid), and shall be deemed given on the date delivered. The time to respond to notices given during the week in between Christmas Eve and New Year's Day shall be tolled until five (5) business days following New Year's Day. Until further notice, the addresses of the company shall be as follows:

**COMPANY's ADDRESS FOR NOTICE:**
**39939 Pretty Pond Road Zephyrhills FL 33540**

**TALENT's ADDRESS FOR NOTICE:**

Mycol armani
_____

## 12. MISCELLANEOUS

**(a)     Entire CONTRACT, Severability and Counterparts.** This CONTRACT expresses the entire understanding of the parties hereto and replaces any and all former CONTRACTs or understandings, written or oral, relating to the subject matter hereof. This CONTRACT may not be modified except by a written instrument signed by the parties. Nothing herein contained shall be construed so as to require the commission of any act contrary to law, and if there is any conflict between any provision of this CONTRACT and any present or future statute, law, ordinance, regulation or provision of any applicable collective bargaining CONTRACT contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision of this CONTRACT affected shall be curtailed and limited only to the extent necessary to make it consistent with such legal requirements or provisions. This CONTRACT may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the CONTRACT.

(b)     **Delivery of Further Instruments.** The TALENT will execute, acknowledge and deliver to COMPANY or cause to be executed, acknowledged and delivered to COMPANY, all further agreements and instruments consistent with this CONTRACT which Company may deem necessary to carry out and effectuate the purpose of this CONTRACT. If TALENT shall fail for any reason to execute and deliver within five (5) business days of Company's written request, that will be considered a

material breach. A material breach as described here shall require full payment of all compensation under the CONTRACT through the end of the term(s) as liquidated damages, in addition to damages under 6(f). For each month of the term not yet past, the compensation shall be based on the highest month then achieved. For example, if only 2 months have passed in the twelve-month term and the higher of the 2 months is $10,000, then the remaining months in the term shall all be paid as though $10,000 was earned. Except that, if additional money is earned by TALENT in the subsequent term than paid herein, COMPANY shall be entitled to the difference, but in no event shall COMPANY be responsible to return any of the liquidated damages payments.

**(c)**     **The TALENT's Services are Unique; Remedies.** The TALENT's services are extraordinary and unique and not replaceable. There is no adequate remedy at law for a material breach of this Agreement by the Talent. In the event of a material breach by the TALENT, COMPANY shall be entitled to seek equitable relief by way of injunction or otherwise. If the Courts so determine that an order causing the TALENT to perform cannot be supported by law or CONTRACT, then TALENT agrees to pay the liquidated damages as described in the Termination Section of this Contract. Under no circumstances may the TALENT seek equitable relief against COMPANY, all such rights being waived. The TALENT acknowledges and agrees that exemplary or punitive damages shall not be recoverable under any circumstance for any claim arising hereunder or in connection herewith. The TALENT's sole remedy in the event of a breach or alleged breach of any provision of this CONTRACT shall be an action for money damages in accordance with the dispute resolution provisions set forth below. Under no circumstances shall the TALENT be entitled to recover consequential or expectancy damages of any kind, to terminate, revoke, or rescind this CONTRACT, or to obtain any injunctive or other equitable relief in connection with this CONTRACT. The TALENT irrevocably relinquishes, waives, releases and disclaims any right, at any time, to any such injunctive or other equitable relief.

**(d)**     **Publicity Restrictions/Non-Disclosure.** The TALENT shall not, without COMPANY's prior written approval, (i) issue or authorize the publication of any news story, publicity or publicity materials relating the TALENT's services hereunder, or COMPANY or its affiliates, (ii) make any derogatory or knowingly false statements concerning COMPANY or any officers, employees or affiliates of COMPANY, (iii) disclose any confidential information regarding COMPANY or its affiliates other than to business representatives, attorneys and as required by law, including, but not limited to, the nature of the SERVICES COMPANY provides or how it operates the TALENT's accounts, or (iv) encourage any other individual to do any of the foregoing; provided, however, the TALENT may issue personal publicity primarily concerning the TALENT in which the

COMPANY or any officers or employees of COMPANY are mentioned incidentally, so long as such references are not derogatory or knowingly false, are limited to reporting factual events or occurrences only, do not contain any confidential information and are made in a manner that could not reasonably constitute an endorsement of the TALENT.

**(e)**     **Governing Law** This CONTRACT shall be governed by the laws of the State of Florida with venue being in the closest court of competent jurisdiction to COMPANY.

**(f)**     **Disputes and Resolution** The parties will attempt in good faith to resolve any controversies, claims or disputes arising out of or related to this CONTRACT or the interpretation, performance or breach thereof including, but not limited to, alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this CONTRACT.

If the parties are unable to reach a mutually acceptable resolution within thirty (30) days after either party gives the other party written notice of a Dispute, then such Disputes, except as set forth in Paragraphs 12(f)(ii) below, shall be resolved according to the procedures set forth in Paragraph 12(f)(i) below, which shall constitute the sole dispute resolution mechanism hereunder.

**(i)**     **Mediation Then Arbitration:** All Disputes shall be mediated with costs borne equally within 60 days of a failure to resolve disputes under 12(f). If mediation is unsuccessful then binding arbitration shall occur in the same county as the COMPANY. The Arbitration shall be initiated and conducted according to either JAMS Streamlined or Comprehensive Arbitration Rules and Procedures, or other similar procedure except as modified herein. The arbitration shall be conducted before a single neutral arbitrator with at least 10 years entertainment experience. The Arbitrator shall follow Florida law and Florida rules of evidence in adjudicating the Dispute. Parties agree to waive rights to punitive damages and agree that Arbitrator shall not have authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. Unless the parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any Florida state or federal court with experience in matters involving the entertainment industry. Costs for the Arbitrator shall be borne equally. Each party shall be responsible for its own attorney fees. Judgment upon the award may be entered in any court of competent jurisdiction.

    **(ii)**   **Jurisdiction and Venue.** Any dispute or part thereof or any claim for a particular form of relief (not otherwise precluded by any other provision of this agreement), that may not be arbitrated pursuant to applicable law may be heard only in a court of competent jurisdiction and the Venue shall be the closest court with jurisdiction to COMPANY's address listed above. Parties hereby submit to the exclusive jurisdiction and venue of the local, state and federal courts located in the county in which COMPANY is based.

**(g) Advice of Counsel.** EACH PARTY ACKNOWLEDGES THAT IN EXECUTING THIS CONTRACT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS CONTRACT. THIS CONTRACT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

**THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT AS OF THE DATE FIRST SET FORTH ABOVE.**

**TALENT**
**By:** _____
           9B0346D9B97B41B...
**(Print Name):** _____Mycol Armani_____
**Date:** __4/1⅌/2022_____

**Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE**
**By:** _____
           4D9C1D807EBC47E...
**Its: (Position)** _____CEO_____
**Authorized Signatory Seth Holbrook**



ALL RIGHTS RESERVED · COPYRIGHT · ALL RIGHTS RESERVED

# EXHIBIT D

**Veronika Balbuzanova**

**From:** OnlyFans Support <support@onlyfans.com>
**Date:** June 30, 2022 at 8:22:01 AM PDT
**To:** Armanimycol <armanimycol@gmail.com>
**Subject:** [OnlyFans] Re: Your OnlyFans Account - Copyright Infringement Notice
**Reply-To:** OnlyFans Support <support@onlyfans.com>

##- Please type your reply above this line -##

Your request (6915625) has been updated. To add additional comments, reply to this email.

**Dana** (OnlyFans)

Jun 30, 2022, 16:22 GMT+1

Hello,

If you believe that this DMCA notice was sent in error, you may file a counter-notification in accordance with our DMCA Policy here: https://onlyfans.com/dmca.
You should only submit a counter-notification if the content was removed because of a mistake or misidentification.

To submit a counter-notice, you will need to provide us with the following information:

1) a description of where the material was located within the Site or the Content before such material was removed and/or disabled (URL(s) in the copyright notice will suffice);
2) a statement reflecting the Recipient's belief that the removal or disabling of the material was done so erroneously. For convenience, the following format may be used:

*"I swear, under penalty of perjury, that I have a good faith belief that the referenced material was removed or disabled by the service provider as a result of mistake or misidentification of the material to be removed or disabled."*

3) your name, address, and telephone number;
4) a statement that you consent to the jurisdiction of the Federal District Court in and for the judicial district in which the address is located, or if your address is outside of the United States, for any judicial district in which the service provider may be found, and that you will accept service of process from the person who provided the Notice, or that person's agent; and
5) a physical or electronic signature (typing your full name will suffice).

1

When we receive a valid DMCA counter-notification, we forward it to the party that reported the content. The information they receive includes your contact information, which they can use to contact you. If we provide your counter-notification to the party that reported the content, and they don't notify us that they have filed a court action seeking an order to keep the content down, we will restore or cease disabling eligible content under the DMCA. This process can take up to 14 business days.

Should you have any questions, please do not hesitate to contact us.

Sincerely,

Dana
OnlyFans

---

**Armanimycol**

Jun 30, 2022, 16:09 GMT+1

Hello Dana this email is in effort to get my account back into good standing. I have not violated any copyright laws and I do not have any legal binding with social athlete as of June of this year. I have not posted content that is associated with the brand or name social athlete. What proof do I need to send to display that the content that I post is not related to social athlete. Also in the future how do I avoid false claims that I am posting content without authorized permission. I have been an onlyfans creator for two years and all of my content has my name on it only. Again how can I dispute this quickly and efficiently.

---

**Dana** (OnlyFans)

Jun 30, 2022, 14:41 GMT+1

Hello,

Please be informed that your account **@armanidlux** has been paused.

Your account has been reported for posting content without authorized permission and/or alleged copyright infringement. We've received a notification under the Digital Millennium Copyright Act ("DMCA") from **Social Athlete** that the following material is claimed to be infringing:

- https://onlyfans.com/armanidlux

Accordingly, under Section 512(c)(1)(C) of DMCA, we've disabled access to the material/account that is claimed to be infringing or to be the subject of infringing activity. Please be aware that copyright infringement violates our Acceptable Use Policy, which states:

*Do not do anything that violates our or someone else's rights, including intellectual property rights (examples of which are copyright, trademarks, confidential information, and goodwill), personality rights, unfair competition, privacy, and data protection rights.*

Also note, that it is the firm policy of OnlyFans to terminate the account of repeat copyright infringers.

If you believe that this DMCA notice was sent in error, you may file a counter notification in accordance with our DMCA Policy here: https://onlyfans.com/dmca
You may submit a counter-notification in reply to this email.

Feel free to let us know if any questions arise.

Sincerely,

Dana
OnlyFans

---

This email is a service from OnlyFans. Delivered by **Zendesk**

## Veronika Balbuzanova

From: **Mycol Armani** <teegotthejuice1814@gmail.com>
Date: Tue, Aug 16, 2022 at 2:15 PM
Subject: Re: [OnlyFans] Re: Your OnlyFans account - Infringement Notice
To: OnlyFans Support <support@onlyfans.com>

On Wed, Aug 10, 2022 at 5:48 AM OnlyFans Support <support@onlyfans.com> wrote:

##- Please type your reply above this line -##

Your request (7245204) has been updated. To add additional comments, reply to this email.

---

**Dana** (OnlyFans)

Aug 10, 2022, 13:48 GMT+1

Hello,

Please be informed that your account **@armaniluxx** has been paused.

We have received another notification under the Digital Millennium Copyright Act ("DMCA") from **Social Athlete** that the following material is claimed to be infringing:

- https://onlyfans.com/armaniluxx

Accordingly, under Section 512(c)(1)(C) of DMCA, we've disabled access to the material/account that is claimed to be infringing or to be the subject of infringing activity. Please be aware that copyright infringement violates our Acceptable Use Policy, which states:

*Do not do anything that violates our or someone else's rights, including intellectual property rights (examples of which are copyright, trademarks, confidential information, and goodwill), personality rights, unfair competition, privacy, and data protection rights.*

Also note, that it is the firm policy of OnlyFans to terminate the account of repeat copyright infringers.

If you believe that this DMCA notice was sent in error, you may file a counter notification in accordance with our DMCA Policy here: https://onlyfans.com/dmca
You may submit a counter-notification in reply to this email.

1

Feel free to let us know if any questions arise.

Sincerely,

Dana
OnlyFans

This email is a service from OnlyFans. Delivered by **Zendesk**

**Dana** (OnlyFans)

Aug 10, 2022, 13:48 GMT+1

Hello,

Please be informed that your account **@armaniluxx** has been paused.

We have received another notification under the Digital Millennium Copyright Act ("DMCA") from **Social Athlete** that the following material is claimed to be infringing:

- https://onlyfans.com/armaniluxx

Accordingly, under <u>Section 512(c)(1)(C) of DMCA</u>, we've disabled access to the material/account that is claimed to be infringing or to be the subject of infringing activity. Please be aware that copyright infringement violates our Acceptable Use Policy, which states:

*Do not do anything that violates our or someone else's rights, including intellectual property rights (examples of which are copyright, trademarks, confidential information, and goodwill), personality rights, unfair competition, privacy, and data protection rights.*

Also note, that it is the firm policy of OnlyFans to terminate the account of repeat copyright infringers.

If you believe that this DMCA notice was sent in error, you may file a counter notification in accordance with our DMCA Policy here: https://onlyfans.com/dmca

You may submit a counter-notification in reply to this email.

Feel free to let us know if any questions arise.

Sincerely,

Hi there,

Unfortunately, we didn't receive any counter notification in the attachment.

To submit a counter-notice, you will need to provide us with the following information:

1) a description of where the material was located within the Site or the Content before such material was removed and/or disabled (URL(s) in the copyright notice will suffice);
2) a statement reflecting the Recipient's belief that the removal or disabling of the material was done so erroneously. For convenience, the following format may be used:

*"I swear, under penalty of perjury, that I have a good faith belief that the referenced material was removed or disabled by the service provider as a result of mistake or misidentification of the material to be removed or disabled."*

3) your name, address, and telephone number;
4) a statement that you consent to the jurisdiction of the Federal District Court in and for the judicial district in which the address is located, or if your address is outside of the United States, for any judicial district in which the service provider may be found, and that you will accept service of process from the person who provided the Notice, or that person's agent; and
5) a physical or electronic signature (typing your full name will suffice).

When we receive a valid DMCA counter-notification, we forward it to the party that reported the content. The information they receive includes your contact information, which they can use to contact you. If we provide your counter-notification to the party that reported the content,

# EXHIBIT E

July 1, 2022

E-mail: support@onlyfans.com

**Re: DMCA Counter Notification of Mistaken Removal or Disabling of Material - Request #6915625**

To Whom It May Concern:

Carbon Law Group represents Mycol Armani, the owner of the OnlyFans account @armanidlux (**"Client"**) in connection with the response to the DMCA Takedown Notice received.

Our client has recently received a DMCA Takedown Notice submitted by Social Athlete. Attached please find our client's DMCA Counter Notification in response to the DMCA Takedown Notice from Social Athlete. If you have any questions or concerns regarding this matter, please feel free to contact my office at (213) 314-3190 or judy@carbonlg.com to discuss.

Nothing contained in this letter and the attachment, nor any act or omission to act by Visionary, is intended or should be deemed to be a waiver, abridgment, alteration, modification or reduction of any rights or remedies that our client may have in regard to this matter and all such rights or remedies, whether at law or in equity, are hereby expressly reserved.

**Carbon Law Group, P.C.**

By: _____

**Judy Yen, Associate Attorney**

1001 Wilshire Blvd. Suite 100
#3200, Los Angeles, CA 90017
O: (213) 314-3190
judy@carbonlg.com

DocuSign Envelope ID: 773C5951-70B9-43A2-8B1F-83B4A41123E3



**CARBON**
LAW GROUP

T: (323) 543-4453 Office |F: (323) 488-7958
contact@carbonlg.com
www.carbonlg.com

## DMCA Counter Notification

Dear OnlyFans:

I am writing in response to the mistaken removal of or disabling of access of the account @armanidlux. I hereby provide counter notification pursuant to the terms of the Digital Millennium Copyright Act ("**Act**") and Shopify's DMCA Notice and Takedown Procedure.

The OnlyFans account @armanidlux located at https://onlyfans.com/armanidlux is removed/paused from your website ("**Service**").

I swear, under penalty of perjury, that I have a good faith belief that the affected material was removed or disabled as a result of a mistake or misidentification of the material to be removed or disabled and that I am the owner of the account subject to the DMCA Takedown Notice.

I therefore request, in accordance with Section 512(g) of the Act, that you replace any removed material and cease disabling access to any blocked material within 14 business days of your receipt of this notice. Please notify me to confirm that any removed material has been replaced and that access to any disabled material has been restored. I may be contacted as follows:

Name: Mycol Akhile

Address: 1001 Wilshire Blvd. Suite 100 #3200, Los Angeles, CA 90017

Telephone: (213) 314-3190

I consent to the jurisdiction of Federal District Court for the judicial district in which my address is located, and I will accept service of process from the party who submitted the DMCA Infringement Notice or its agent.

I acknowledge that a copy of this counter notification, including my full name and contact information, will be provided to the party that submitted the DMCA Takedown Notice.

The above is not an exhaustive statement of all the relevant facts and law, and I expressly reserve all of my equitable and legal rights and remedies.

Sincerely,

Mycol Akhile

By: _____
DocuSigned by:
*Mycol Akhile*
9B0346D9D97D41D...

# EXHIBIT F

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL COURT**
**IN AND FOR BROWARD COUNTY**
**CIVIL DIVISION**

SOCIAL ATHLETE d/b/a
SETH HOLBROOK FITNESS, LLC

      Plaintiff,

vs.

MYCOL AKHILE

      Defendant.

_____/

**PLAINTIFF'S CIVIL COMPLAINT AND**
**REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION**

    Plaintiff Seth Holbrook Fitness, LLC, by and through undersigned counsel, hereby

submits its Civil Complaint against Defendant Mycol Akhile and for the causes of action alleges

as follows:

**JURISDICTION AND VENUE**

1. This is an action by Plaintiff against Defendant for breach of contract and copyright
   infringement.

2. Venue is appropriate in Broward County because the acts or omissions related to
   Plaintiff's cause of action arose in the Circuit.

3. This Court has jurisdiction over the matter as the Plaintiff's allegations touch on
   violations of Florida state law.

**PARTIES**

4. Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC (Hereinafter "Plaintiff"), is an entity licensed to do business in the state of Florida.

5. Defendant Joel Cherry Jr. (Hereinafter "Defendant") is a U.S. citizen.

## GENERAL FACTUAL ALLEGATIONS

6. Defendant and Plaintiff entered into a contract in April 2022 for Plaintiff to provide Defendant management consultation and production. Such agreement is attached to this Complaint.

7. As a covenant in the retention agreement, Defendant agreed that Plaintiff would own the copyright to all content produced under the agreement between the parties.

8. Plaintiff relied on these promises, and would not have entered into this agreement with Defendant unless said promises were upheld.

9. Defendant breached his agreement with Plaintiff on June 28th, 2022 by failing to uphold the covenants in his management retention agreement, and further, continued and continues to date to publish copyrighted material on a 3rd party website without the consent or permission of Plaintiff.

10. Defendant's actions in publishing the copyrighted material injure and continue to injure Plaintiff to date, and Plaintiff pleads with the Court to enter a temporary and/or permanent injunction against Defendant.

## COUNT I - DEMAND FOR INJUNCTION

11. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 10 as if set forth herein in full.

12. Defendant has violated and continues to violate his contractual duties to date.

13. The Plaintiff is uniquely damaged by the dissemination of its copyrighted material by the Defendant without express permission.

14. Defendant's conduct as alleged constitutes acts worthy of a temporary or permanent injunction preventing the further injuring of Plaintiff's business.

15. A temporary injunction prior to a hearing on any permanent injunction would be proper in this instance, and when balancing the equities, would not unduly burden the Defendant.

WHEREFORE, Plaintiff demands a temporary and/or permanent injunction enjoining the Defendant from any further injurious behavior against the Plaintiff's business.

## COUNT II - BREACH OF CONTRACT

16. Plaintiff re-alleges the allegations set forth in above paragraphs 1 through 10 set forth herein in full.

17. Defendant and Plaintiff entered into contract with one another in April 2022.

18. Defendant materially his contract, and said breach has materially injured Plaintiff to date.

19. In particular, the dissemination of copyrighted material without permission to a 3rd party site, contrary to the explicit covenants of the management retention agreement, is the aforesaid breach in this instance.

20. This Court has the requisite authority to make Plaintiff whole from Defendant's breach of contract.

WHEREFORE, Plaintiff demands damages for the breach of contract in this matter.

## COUNT III - COPYRIGHT INFRINGEMENT

21. Plaintiff re-alleges the allegations set forth in above paragraphs 1 through 10 as if set forth herein in full.

22. Defendant and Plaintiff engaged in a contract.

23. Within that contract were provisions providing the Plaintiff with exclusive copyright authority over the published material in its agreement with Defendant.

24. The Defendant has breached said agreement, and has infringed on the Plaintiff's copyright rights by disseminating protected copyright material which is the lawful property of the Plaintiff.

WHEREFORE, Plaintiff demands damages for copyright infringement in this matter against the Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff requests that the Court enter judgment in its favor and award it the following relief:

a. All economic benefits lost as a result of Defendant's wrongful acts;

b. Compensatory damages to fully compensate Plaintiff for its injuries caused by the Defendant's breach of contract;

c. An Order temporarily and/or permanently enjoining Defendant from any further unauthorized content usage;

d. Pre- and post-judgment interest; and

e. Such other relief this Court deems just and proper, together with Plaintiff's costs and disturbances in this action.


Respectfully submitted on July 11, 2022.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that after filing, a copy of the Civil Complaint was served upon the

Defendant via Florida process server.


s/ Attorney Trescot Gear

Trescot J. Gear, Esq.

Fla Bar No. 118216

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B



Social Media Agency

## Service Contract

This Service Contract ("Contract"), dated as of 19th day of April, 2022, is between Mycol Armani (The "TALENT") and Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE ("COMPANY") and shall be collectively referred to as the "PARTIES."

### Recitals:

WHEREAS the TALENT is in the business of producing, marketing and selling content on various online platforms, including but not limited to, TALENT's own website(s), Instagram, TikTok, Snapchat, OnlyFans.com, and various other social media platforms and

WHEREAS COMPANY is experienced and skilled in social media marketing, promotion, content creation, videography, photography, video and photo editing, social media management, business consultation, paid content deployment, paid content creation, paid content sales, and the general operation of subscription platforms including but not limited to TIKTOK, YouTube, Facebook, Instagram, Snapchat, Patreon, OnlyFans.com and its accompanying App. ("Only Fans") and other platforms; and

WHEREAS the TALENT wishes to engage Company as a full-service production, management, marketing and consulting company for the TALENT for the purpose of providing the services as more full set forth herein.

WHEREAS, COMPANY offers the SERVICES listed herein, TALENT accepts the same and both parties provide consideration, specifically, TALENT agrees to pay the fees contained herein and COMPANY agrees to perform the SERVICES herein.

The PARTIES agree as follows:

### 1. DESCRIPTION OF SERVICES AND TALENT OBLIGATIONS

(a) **Engagement.** The TALENT hereby retains COMPANY to provide, and COMPANY agrees to provide the SERVICES described in subsection (b) below. TALENT agrees that this is an exclusive CONTRACT and TALENT may not hire any other Company, individual, or entity to perform the same SERVICES as COMPANY.

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

(b) **Services.** COMPANY shall use reasonable commercial efforts, in good faith to perform the following (the "SERVICES"), in a timely and professional manner, in accordance with standards prevailing in the TALENT's and COMPANY's industry, and in accordance with applicable laws, rules and regulations:

    a. Assist and guide Talent on scaling their online business and social media presence and aid in facilitation of all content that is posted on social media including, but not limited to, subscription platforms such as OnlyFans.com, Patreon, or any other Platform that PARTIES are now aware of or become aware of, by providing practical advice to TALENT.

    b. COMPANY will work to assist TALENT with promoting the products and content TALENT offers on their personal site(s), social media, OnlyFans.com, and any other Platform that PARTIES are now aware of or become aware of and decide to use.

    c. Company will regularly consult with TALENT on growing their online business, social media presence, and on what content TALENT should produce in order to fulfill customer orders on their website(s), platform(s), and OnlyFans.com. In situations where customer orders pertain to professionally produced content, COMPANY will assist TALENT in producing such content by performing filming, drafting and editing. In the event that the requested service exceeds the capability of COMPANY, COMPANY may, at its discretion, hire third parties to complete this function and will be entitled to reimbursement by the TALENT for the costs incurred.

    d. COMPANY will use good faith efforts to assist in the removal of any and all unauthorized publication of works produced as a result of this CONTRACT.

    e. In the performance of the SERVICES, COMPANY will serve the TALENT in good faith, ensuring, within its reasonable control, that it is:

        i. protecting the TALENT's interests consistent with the purpose of this CONTRACT;
        ii. observing all applicable laws related to the TALENT's activities; and
        iii. acting in accordance with professional production and management practices;

    f. COMPANY will use good faith efforts to communicate regularly with the TALENT concerning progress COMPANY has made in performing the SERVICES.

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

(c) **TALENT's Obligations.** The TALENT shall comply with all applicable laws, rules and regulations applicable hereto. The TALENT shall not engage in any activity or post any content that:

   a. Constitutes or promotes illegal activity or violates any applicable laws or regulations;
   b. infringes, violates or misappropriates any third-party intellectual property rights, including copyright, trade secrets or trademarks, publicity and/or privacy rights, is libelous, defamatory, abusing, harassing, or threatening, or in any way causes legal or actual damage to others;
   c. contains any obscene, racist or otherwise offensive material or language as defined by such platforms terms and conditions, guidelines, and the like;
   d. exploits or harms children, directly or indirectly, including by exposing them to inappropriate material or asking them for any personal-information or remuneration;
   e. links to any third-party sites or services that would violate the standards and terms contained within this CONTRACT.
   f. The TALENT shall not advertise other paid media outlets(i.e. MyfreeCams, Fan Centro or Paid Snap) using their OnlyFans account during the term of this CONTRACT unless authorized in writing by COMPANY.
   g. The TALENT shall not engage in deceptive trade practices or otherwise violate Federal Trade Commission Regulations.
   h. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.
   i. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.

## 2. COMPENSATION

(a) **Management Fee.** During the Term, COMPANY shall be entitled to a fee equal to 20% (Twenty percent) of the gross revenue (pre-tax, pre-costs, and without deduction of any third party processors or OnlyFans fees directly or any other commissions or fees) whether fixed or contingent, received or accrued. Compensation and any other form of remuneration or revenue in whatever form including without limitation bonuses, deferments, participations and the like, contingent or otherwise, sponsorships, advertising, merchandise, commercial tie-ins, Endorsements, or any other opportunity to earn income arising from, or otherwise in connection with the SERVICES herein (collectively, the "Compensation"), are payable as received or accrued.

COMPANY shall further be entitled to its fee with respect to revenue received after the expiration of the Term if it is generated prior to expiration

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

of the Term. It is agreed that all revenue received by TALENT within 30 days after expiration of the Term shall be attributed to COMPANY. If the TALENT's revenue increases by 50% or more during Term, the Term shall be automatically extended for an additional twelve (12) months from the would be end of the term contemplated under this CONTRACT. COMPANY, in its sole discretion, may choose not to renew. However, if no objection by COMPANY is made as to the renewal, all other terms herein shall remain in effect unless modified by subsequent writing and signed by both PARTIES.

**(b) Payment of the Fee.** The TALENT agrees to irrevocably direct third-parties as outlined below and to irrevocably authorize COMPANY on the TALENT's behalf to either:

    **a.** have the third parties pay to COMPANY the applicable Fee set forth above directly, deduct such amounts paid to Company from amounts of Compensation payable to the TALENT and then pay the TALENT the balance of the Compensation directly from the third parties, if the third parties so agree, **OR**

    **b.** if third parties do not so agree or are otherwise unable to, then it shall be the sole responsibility of the TALENT to, and TALENT agrees to, pay the Fee due to COMPANY on such compensation (as set forth above) immediately upon the earlier of receipt or accrual of the compensation no later than the 3rd of each month. TALENT shall send proof of monthly revenue no later than the 28th of each month with the 20% fee not then paid and COMPANY shall invoice the TALENT for such amounts but such invoice shall not be a condition precedent to the obligation to remit the Fee to COMPANY.

## 3. TERM AND TERMINATION

**(a) Initial Term and Automatic Subsequent Terms.** This CONTRACT is effective as of the date written above and shall continue for a term of one (1) year (the "Initial Term"), provided that if TALENT is entitled to Compensation of fifty thousand (50,000) dollars or more during the Initial Term or Revenue is increased by more than 50% as outlined above, the Initial Term shall be automatically extended for an additional period of twelve (12) months. If TALENT is entitled to Compensation of two hundred thousand ($200,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of two (2) years. If TALENT is entitled to Compensation of one million (1,000,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of three (3) years. Each extension shall be considered an "Additional Term"

Unless the Talent gives written notice to Company at least ninety (90) days before the end of the Initial Term or Additional Term, as applicable, this CONTRACT will renew automatically for additional, successive one (1) year

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

periods (each, an "Additional Term" and together with the Initial Term, collectively, the "Term").

**(b) Termination.** This CONTRACT may be terminated immediately and without notice upon discretion by COMPANY, with or without cause WITHOUT REMEDY TO TALENT, and may be terminated by Talent on ninety (90) days prior written notice for a material breach of this CONTRACT. TALENT shall cause notice upon COMPANY in writing describing the material breach with sufficient detail so as to allow COMPANY to correct the breach. COMPANY shall then have thirty (30) days from proper notice to correct alleged breach. If breach is cured, TALENT shall not be entitled to freely terminate this CONTRACT without consequence. In the event of early Termination by TALENT, compensation due to COMPANY shall continue to be paid until what would be the end of the Initial or additional Term but for the termination, whichever is later. This compensation shall be projected based on the highest month of income then achieved and multiplied by the number of months in the term and is due immediately. Example of this calculation is provided in section 12(b). If the projected value is lower than the actual value, TALENT shall be required to remit payment based on the actual amount as received or accrued but offset by the prior projected payment.

## 4. NATURE OF RELATIONSHIP

**(a) Independent Contractor.** The relationship of the parties under this CONTRACT is one of independent contractors, and no joint venture, partnership, agency, employer-employee, or similar relationship is created in or by this CONTRACT. Neither party may assume or create obligations on the other party's behalf, and neither party may take an action that creates the appearance of such authority, EXCEPT, COMPANY shall have the requisite authority to carry out its duties under this CONTRACT. TALENT is responsible for paying their own tax obligations created from the execution of this CONTRACT.

**(b) Control.** Company has the sole right to control and direct the means, details, manner, and method by which the SERVICES will be performed, and the right to perform SERVICES at any time, place, or location. COMPANY shall perform the SERVICES and TALENT is not required to hire, supervise, or pay any assistants to help COMPANY with respect thereto. Further TALENT shall not be permitted to hire, supervise, or pay any assistants to help COMPANY with respect thereto without prior written approval from COMPANY.

## 5. TALENT'S INTELLECTUAL PROPERTY

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

(a) **Reproduction and Distribution.** TALENT grants COMPANY a NON-EXCLUSIVE irrevocable license so that COMPANY may use, reproduce, and distribute the TALENT's service marks, trademarks, and trade names, or any other intellectual property belonging to TALENT (collectively the "TALENT MARKS") in connection with the performance of the SERVICES. Sole license in this section is intended to mean that, other than TALENT, COMPANY shall be the sole party with authority to use TALENT's intellectual property.

(b) **Ownership Retention.** Any goodwill or other value generated or received from the use contemplated under 5(a) will accrue to the TALENT and TALENT shall remain the sole owner of the TALENT MARKS. COMPANY may not engage in activities or commit acts, directly or indirectly, that may contest, dispute, or otherwise impair the TALENT's interest in the TALENT MARKS. COMPANY may not apply for, acquire, or claim any interest in any TALENT MARKS, or other intellectual property that may be confusingly similar to any of the TALENT MARKS.

(c) **Copyright Ownership.** Any and all copyrights which may exist or come into being with respect to any and all content created by COMPANY on behalf of the TALENT and/or content created by TALENT at the instruction of COMPANY shall be the property of COMPANY. To the fullest extent permitted by law, TALENT hereby assigns any copyright which now exists and agrees to assign copyright he/she may acquire in any content created or posted on social media or online platforms to the COMPANY for the duration of the copyright and any extensions thereof. TALENT agrees to execute all necessary documents including a power of attorney to complete the transfer and assign any copyright interest of TALENT in content produced by COMPANY to COMPANY. It is expressly agreed that works created by COMPANY under this CONTRACT shall belong solely to COMPANY. A failure to execute necessary documents under this provision by TALENT shall be considered a breach and liquidated damages of $25,000 per occurrence shall be paid.

## 6. CONFIDENTIAL INFORMATION

(a) **TALENT's Confidential Information Defined.** During the Term, COMPANY may have access to or receive certain information of or about the TALENT that the TALENT designates as confidential in writing or that, under the circumstances surrounding disclosure ought to be treated as confidential, in the discretion of the COMPANY, by the COMPANY. This shall be referred to as "Confidential Talent Information". Confidential Talent Information includes identifying information relating to the TALENT or its current or proposed business, products, endorsements, sponsorships, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media.

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

(b) **COMPANY's Handling of Confidential Information.** COMPANY will treat the Confidential Talent Information as confidential, meaning, it will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT. In addition, COMPANY shall use reasonable care and diligence to prevent the unauthorized use or disclosure of such information by COMPANY's agents or employees.

(c) **Limitations of Obligations under this section.** The obligations and restrictions in this section do not apply to that part of the Confidential Talent Information that: (i) was or becomes publicly available other than as a result of a disclosure by COMPANY in violation of this CONTRACT; (ii) was or becomes available to COMPANY on a nonconfidential basis before its disclosure to COMPANY by the TALENT, but only if: (1) the source of such information is not bound by a confidentiality CONTRACT with the TALENT or is not otherwise prohibited from transmitting the information to COMPANY by a contractual, legal, fiduciary, or other obligation; and (2) COMPANY provides the TALENT with written notice of its prior possession either (I) before the effective date of this CONTRACT or (II) if COMPANY later becomes aware (through disclosure to COMPANY) of any aspect of the Confidential Talent Information as to which COMPANY had prior possession, promptly on COMPANY so becoming aware; (iii) is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, COMPANY shall: (1) provide the TALENT with prompt notice of these requests or requirements before making a disclosure so that the TALENT may seek an appropriate protective order or other appropriate remedy; and (2) provide reasonable assistance to the TALENT in obtaining any protective order. If a protective order or other remedy is not obtained or the TALENT grants a waiver under this CONTRACT, COMPANY may furnish that portion (and only that portion) of the Confidential Talent Information that is, in the written opinion of counsel reasonably acceptable to the TALENT or that COMPANY is legally compelled or otherwise required to disclose. However, COMPANY shall make reasonable efforts to obtain reliable assurance that confidential treatment will be afforded to any part of the Confidential Talent Information disclosed in this way or was developed by COMPANY independently without breach of this CONTRACT.

(d) **COMPANY's Confidential Information Defined.** During the Term, the TALENT may have access to or receive certain information of or about COMPANY that COMPANY designates as confidential or that, under the circumstances surrounding disclosure ought to be treated as confidential by the Talent ("Confidential Company Information"). Confidential Company Information includes but is not limited to advice given to TALENT in the performance of COMPANY's SERVICES, information relating to COMPANY or its current or proposed business, promotion techniques, financial statements, budgets and projections, customer identifying information,

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

employers, consultants, vendors, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The TALENT will treat the Confidential Company Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT.

**(e) TALENT's Handling of COMPANY Confidential Information.** TALENT shall use due care and diligence to prevent the unauthorized use or disclosure of such information. For the avoidance of doubt, the TALENT shall treat this CONTRACT as Confidential Company Information.

**(f) Liquidated Damages.** The parties agree that in the event of a breach of the confidential provisions, it would be impracticable and extremely difficult to ascertain the amount of actual damages or fix actual damages. Therefore, it is agreed that in the event of such a breach, the TALENT shall pay, as liquidated damages, and not as penalty, the sum of Twenty-Five Thousand Dollars ($25,000.00) for each breach. Because the injury or injuries that the COMPANY may sustain by reason of the breach may not be readily ascertainable and not easily proved, the foregoing amount is understood and agreed by the parties as reasonable liquidated damages and is intended as compensation and not as a penalty for the injury or injuries suffered and the loss incurred because of such a breach. In an action initiated by COMPANY to enforce any of the provisions of this CONTRACT or to seek damages for breach of the provisions of this CONTRACT, the COMPANY shall be entitled to recover reasonable attorney's fees.

## 7. FORCE MAJEURE

(a) If the TALENT fails, refuses or is unable for any reason whatsoever, which cannot be overcome by due diligence, to render services hereunder or if production of the TALENT's services is interrupted or materially interfered with because of any force majeure events (e.g., any labor dispute, strike, lock-out, fire, war, act-of-God, epidemic, pandemic, governmental action or proceeding, injunction, illness, disability, death or other material interference with the production of the Talent's services or any other event beyond the Talent's and/or Company's control, the Term of this CONTRACT shall be extended for by a period equal to the duration of any such failure, refusal, or inability or the occurrence of any of the foregoing events. Either party shall be excused from such performance to the extent that either party's respective obligations are necessarily prevented, hindered or delayed during the continuance of any such happening or event and this contract shall be deemed suspended except to the extent that the CONTRACT may still be performed, including payment of the fee to COMPANY. Strictly economic conditions may not be used in excusing obligations arising herein.

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

## 8. REPRESENTATIONS AND WARRANTIES

(a) **TALENT's Representations and Warranties.** The TALENT represents and warrants as follows: (i) that the TALENT has the right to enter into this CONTRACT and that the consent of no other party is necessary with respect thereto; and (ii) that the TALENT is not subject to any conflicting obligations or disabilities, which will prevent or interfere with the execution and performance of this CONTRACT.

(b) **COMPANY's Representations and Warranties.** The COMPANY makes no warranties or representations beyond what is stated within this CONTRACT. Specifically, COMPANY makes no warranty or representation with respect to the amount of compensation that The TALENT will generate in connection with COMPANY's SERVICES pursuant to this CONTRACT and nothing contained herein shall be construed to obligate COMPANY to take any further action to maximize such compensation. COMPANY only warrants that it will provide, in its best judgement, advice to accomplish the SERVICES in 1(b). Nothing contained in this CONTRACT shall be construed as creating a fiduciary relationship between COMPANY and TALENT.

## 9. INDEMNITY

(a)   **General.** THE TALENT SHALL INDEMNIFY AND HOLD HARMLESS COMPANY, ITS PARENT, SUBSIDIARIES, SUCCESSORS, LICENSEES AND ASSIGNS AND ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, TRUSTEES OR REPRESENTATIVES AGAINST ANY AND ALL LIABILITY, DAMAGES, COSTS AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE OUTSIDE ATTORNEYS' FEES AND COSTS, IN CONNECTION WITH ANY THIRD PARTY CLAIM OR ACTION ARISING OUT OF THE UNCURED MATERIAL BREACH OF ANY OF THE TALENT'S REPRESENTATIONS, WARRANTIES, CONTRACTS, UNDERTAKINGS OR CERTIFICATIONS HEREUNDER, INCLUDING BUT NOT LIMITED TO A BREACH BY THE TALENT OF THE CONFIDENTIALITY AND NON-DISCLOSURE PROVISIONS, OR MATERIAL SUPPLIED TO COMPANY BY THE TALENT, OR MATERIAL INCORPORATED BY COMPANY ON BEHALF OF OR AT THE REQUEST OF THE TALENT IN ANY PRODUCTION, PHOTO SHOOT, ETC. FOR USE IN THE PERFORMANCE OF THE TALENT'S SERVICES HEREUNDER; OR THE DEVELOPMENT, PRODUCTION, ADVERTISING, PROMOTION, DISTRIBUTION AND/OR EXPLOITATION OF THE TALENT'S CONTENT OR ELEMENTS THEREOF OR ANCILLARY THERETO. TALENT EXPLICITLY AGREES TO INDEMNIFY COMPANY IN THE EVENT THAT TALENT PROVIDES INTELLECTUAL PROPERTY TO COMPANY THAT TALENT IS NOT AUTHORIZED TO PROVIDE EVEN IN THE PRESENCE OF NEGLIGENCE ON THE PART OF THE COMPANY IN USING, POSTING, OR PRODUCING IT ANY WAY. TALENT FURTHER AGREES TO

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

INDEMNIFY COMPANY IN THE EVENT THAT POSTS OR THE LIKE
VIOLATE APPLICABLE LAWS OR REGULATIONS INCLUDING BUT NOT
LIMITED TO THE FEDERAL TRADE COMMISSION AND STATE LAWS
AND CAUSES DAMAGES, INCLUDING THE COST TO DEFEND. THIS
INDEMNIFICATION BY TALENT ALSO COVERS IMPROPER SALES TO
MINORS.

(b)   **Retention Of Control & Indemnity.** COMPANY AND THE TALENT
SHALL, UPON PRESENTATION OR INSTITUTION OF ANY CLAIM OR
ACTION COVERED BY THE FOREGOING INDEMNITY, PROMPTLY
NOTIFY THE OTHER OF THE CLAIM OR ACTION, GIVING THE DETAILS
THEREOF. ALL ASPECTS OF THE DEFENSE OF SUCH CLAIMS OR
ACTIONS, WHETHER AS PART OF ANY LITIGATION, NEGOTIATION OR
OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY DECISION
REGARDING SETTLEMENT), SHALL BE CONTROLLED BY COMPANY.
COMPANY SHALL BE FREE TO USE COUNSEL OF COMPANY'S CHOICE
IN CONNECTION THEREWITH. COMPANY'S CONTROL SHALL NOT
DIMINISH THE TALENT'S OBLIGATIONS UNDER PARAGRAPH 9 (A)
ABOVE. THE TALENT SHALL REASONABLY COOPERATE IN THE
DEFENSE OF ANY CLAIM OR ACTION FOR WHICH INDEMNIFICATION
IS PROVIDED HEREUNDER AND SHALL HAVE THE RIGHT (AT THE
TALENT'S EXPENSE) TO HAVE COUNSEL PRESENT IN CONNECTION
THEREWITH, PROVIDED SUCH COUNSEL FULLY COOPERATES WITH
COMPANY'S COUNSEL AND DOES NOT INTERFERE WITH THE
REASONABLE HANDLING OF THE CLAIM OR ACTION BY COMPANY.
COMPANY SHALL NOT SETTLE ANY SUCH CLAIM(S) ADVERSE TO THE
TALENT WITHOUT THE TALENT'S PRIOR WRITTEN APPROVAL AND
SAID APPROVAL MAY NOT BE UNREASONABLY WITHHELD.

## 10.   ASSIGNMENT

(a)   **General.** COMPANY may unilaterally assign, license and/or delegate this
CONTRACT (in whole or in part) to any entity, individual, parent,
subsidiary or affiliated corporation of Company, or to any entity with or
into which COMPANY merges or consolidates, or which succeeds to all or
a substantial portion of COMPANY's assets. This CONTRACT and any or
all of said rights, obligations, options, privileges and/or services shall
inure to the benefit of and may in turn be freely licensed or assigned by,
any such assignee, successor, transferee or delegate. The services to be
rendered by the TALENT hereunder are personal to the TALENT and of
the essence of this CONTRACT. Neither this CONTRACT nor any of the
TALENT's rights or obligations hereunder may be assigned, delegated or
otherwise transferred by the TALENT; EXCEPT that the TALENT may
assign the right to receive the Compensation due from COMPANY at any

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

time. Any such assignment shall at all times be subject to all of COMPANY's rights hereunder. Any assignment shall be evidenced in writing and provided to the other party promptly.

## 11. NOTICES

(a) **General.** Unless otherwise provided herein, all notice from the TALENT shall be in writing and shall be sent to the address set forth below (subject to changes of which the parties are notified in writing). Notices from TALENT shall be given by registered or certified mail (postage prepaid), and shall be deemed given on the date delivered. The time to respond to notices given during the week in between Christmas Eve and New Year's Day shall be tolled until five (5) business days following New Year's Day. Until further notice, the addresses of the company shall be as follows:

**COMPANY's ADDRESS FOR NOTICE:**
**39939 Pretty Pond Road Zephyrhills FL 33540**

**TALENT's ADDRESS FOR NOTICE:**
Mycol armani

## 12. MISCELLANEOUS

(a) **Entire CONTRACT, Severability and Counterparts.** This CONTRACT expresses the entire understanding of the parties hereto and replaces any and all former CONTRACTs or understandings, written or oral, relating to the subject matter hereof. This CONTRACT may not be modified except by a written instrument signed by the parties. Nothing herein contained shall be construed so as to require the commission of any act contrary to law, and if there is any conflict between any provision of this CONTRACT and any present or future statute, law, ordinance, regulation or provision of any applicable collective bargaining CONTRACT contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision of this CONTRACT affected shall be curtailed and limited only to the extent necessary to make it consistent with such legal requirements or provisions. This CONTRACT may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the CONTRACT.

(b) **Delivery of Further Instruments.** The TALENT will execute, acknowledge and deliver to COMPANY or cause to be executed, acknowledged and delivered to COMPANY, all further agreements and instruments consistent with this CONTRACT which Company may deem necessary to carry out and effectuate the purpose of this CONTRACT. If TALENT shall fail for any reason to execute and deliver within five (5) business days of Company's written request, that will be considered a

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

material breach. A material breach as described here shall require full payment of all compensation under the CONTRACT through the end of the term(s) as liquidated damages, in addition to damages under 6(f). For each month of the term not yet past, the compensation shall be based on the highest month then achieved. For example, if only 2 months have passed in the twelve-month term and the higher of the 2 months is $10,000, then the remaining months in the term shall all be paid as though $10,000 was earned. Except that, if additional money is earned by TALENT in the subsequent term than paid herein, COMPANY shall be entitled to the difference, but in no event shall COMPANY be responsible to return any of the liquidated damages payments.

(c)    **The TALENT's Services are Unique; Remedies.** The TALENT's services are extraordinary and unique and not replaceable. There is no adequate remedy at law for a material breach of this Agreement by the Talent. In the event of a material breach by the TALENT, COMPANY shall be entitled to seek equitable relief by way of injunction or otherwise. If the Courts so determine that an order causing the TALENT to perform cannot be supported by law or CONTRACT, then TALENT agrees to pay the liquidated damages as described in the Termination Section of this Contract. Under no circumstances may the TALENT seek equitable relief against COMPANY, all such rights being waived. The TALENT acknowledges and agrees that exemplary or punitive damages shall not be recoverable under any circumstance for any claim arising hereunder or in connection herewith. The TALENT's sole remedy in the event of a breach or alleged breach of any provision of this CONTRACT shall be an action for money damages in accordance with the dispute resolution provisions set forth below. Under no circumstances shall the TALENT be entitled to recover consequential or expectancy damages of any kind, to terminate, revoke, or rescind this CONTRACT, or to obtain any injunctive or other equitable relief in connection with this CONTRACT. The TALENT irrevocably relinquishes, waives, releases and disclaims any right, at any time, to any such injunctive or other equitable relief.

(d)    **Publicity Restrictions/Non-Disclosure.** The TALENT shall not, without COMPANY's prior written approval, (i) issue or authorize the publication of any news story, publicity or publicity materials relating the TALENT's services hereunder, or COMPANY or its affiliates, (ii) make any derogatory or knowingly false statements concerning COMPANY or any officers, employees or affiliates of COMPANY, (iii) disclose any confidential information regarding COMPANY or its affiliates other than to business representatives, attorneys and as required by law, including, but not limited to, the nature of the SERVICES COMPANY provides or how it operates the TALENT's accounts, or (iv) encourage any other individual to do any of the foregoing; provided, however, the TALENT may issue personal publicity primarily concerning the TALENT in which the

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

COMPANY or any officers or employees of COMPANY are mentioned incidentally, so long as such references are not derogatory or knowingly false, are limited to reporting factual events or occurrences only, do not contain any confidential information and are made in a manner that could not reasonably constitute an endorsement of the TALENT.

(e) **Governing Law** This CONTRACT shall be governed by the laws of the State of Florida with venue being in the closest court of competent jurisdiction to COMPANY.

(f) **Disputes and Resolution** The parties will attempt in good faith to resolve any controversies, claims or disputes arising out of or related to this CONTRACT or the interpretation, performance or breach thereof including, but not limited to, alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this CONTRACT.

If the parties are unable to reach a mutually acceptable resolution within thirty (30) days after either party gives the other party written notice of a Dispute, then such Disputes, except as set forth in Paragraphs 12(f)(ii) below, shall be resolved according to the procedures set forth in Paragraph 12(f)(i) below, which shall constitute the sole dispute resolution mechanism hereunder.

(i) **Mediation Then Arbitration:** All Disputes shall be mediated with costs borne equally within 60 days of a failure to resolve disputes under 12(f). If mediation is unsuccessful then binding arbitration shall occur in the same county as the COMPANY. The Arbitration shall be initiated and conducted according to either JAMS Streamlined or Comprehensive Arbitration Rules and Procedures, or other similar procedure except as modified herein. The arbitration shall be conducted before a single neutral arbitrator with at least 10 years entertainment experience. The Arbitrator shall follow Florida law and Florida rules of evidence in adjudicating the Dispute. Parties agree to waive rights to punitive damages and agree that Arbitrator shall not have authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. Unless the parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any Florida state or federal court with experience in matters involving the entertainment industry. Costs for the Arbitrator shall be borne equally. Each party shall be responsible for its own attorney fees. Judgment upon the award may be entered in any court of competent jurisdiction.

DocuSign Envelope ID: C200B6BC-E928-47D0-8E7D-2CB47A99DC2B

    **(ii)**    **Jurisdiction and Venue.** Any dispute or part thereof or any claim for a particular form of relief (not otherwise precluded by any other provision of this agreement), that may not be arbitrated pursuant to applicable law may be heard only in a court of competent jurisdiction and the Venue shall be the closest court with jurisdiction to COMPANY's address listed above. Parties hereby submit to the exclusive jurisdiction and venue of the local, state and federal courts located in the county in which COMPANY is based.

**(g)** **Advice of Counsel.** EACH PARTY ACKNOWLEDGES THAT IN EXECUTING THIS CONTRACT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS CONTRACT. THIS CONTRACT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

**THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT AS OF THE DATE FIRST SET FORTH ABOVE.**

**TALENT**

**By:** _____

(Print Name): Mycol Armani

**Date:** 4/18/2022

Seth Holbrook Fitness LLC/d/b/a **SOCIAL ATHLETE**

**By:** _____

**Its: (Position)** CEO

**Authorized Signatory Seth Holbrook**



# EXHIBIT G

**Veronika Balbuzanova**

| | |
|---|---|
| **To:** | support@onlyfans.com; dmca@onlyfans.com |
| **Cc:** | Jade Taylor; Mark Johnson; Pascal Peng |
| **Subject:** | RE: DMCA Counter-Notification o/b/o Mr. Mycol Armani (@armaniluxx) |

---

**From:** Veronika Balbuzanova
**Sent:** Wednesday, August 17, 2022 4:50 PM
**To:** support@onlyfans.com; dmca@onlyfans.com
**Cc:** Jade Taylor <JT@JohnsonDalal.com>; Mark Johnson <MJ@JohnsonDalal.com>; Pascal Peng <PP@JohnsonDalal.com>
**Subject:** DMCA Counter-Notification o/b/o Mr. Mycol Armani (@armaniluxx)

Dear OnlyFans Support:

Please be advised that the undersigned law firm has the pleasure of representing Mr. Mycol Armani ("Mr. Armani"), the owner of the @armaniluxx OnlyFans account ("the Account"), in connection with his legal affairs and, more specifically, in connection with the DMCA notification ("Notice") that was recently submitted against the Account by Social Athlete. A true and correct copy of the referenced DMCA notification is attached hereto for ease of reference. Because the Notice is erroneous and false, and the allegedly infringing material has been wrongly removed, we hereby provide the following DMCA Counter-Notification (in accordance with, and with reference to, specific sections of OnlyFans' DMCA Takedown Policy) on behalf of our client.

(a)-(b) The OnlyFans account @armanidluxx located at https://onlyfans.com/armanidluxx was recently, and continues to be as of the undersigned date, removed/disabled from the OnlyFans website. The Account, and all content depicted thereon, was removed/disabled in its entirety.

(c), (e) I am an authorized agent of Mr. Armani, serving in my capacity as his attorney. Accordingly, I certify as follows:

"I swear, under penalty of perjury, that I have a good faith belief that the referenced material was removed or disabled by the service provider as a result of mistake or misidentification of the material to be removed or disabled.

I consent to the jurisdiction of the Federal District Court in and for the judicial district where Mr. Armani is located, or if Mr. Armani is outside of the United States, for any judicial district in which the service provider may be found, and Mr. Armani will accept service of process from the person who provided the Notice, or that person's agent."

(d) My physical address, telephone number, and email address are as follows: 111 N. Pine Island Rd., Suite 105, Plantation, FL 33324; 954-507-4500; VB@JohnsonDalal.com.

My electronic signature is reflected below.

In accordance with the foregoing Counter-Notice, we hereby request, in accordance with Section 512(g) of the DMCA, that OnlyFans reinstate the Account, replace any removed material, and cease disabling access to any blocked material within 14 business days of OnlyFans' receipt of this Counter-Notice. I further acknowledge that a copy of this Counter-Notice, including my full name and contact information, will be provided to the party that submitted the DMCA Takedown Notice. Should you require any additional information in connection with this matter, please let me know.

Nothing herein shall be construed as a waiver of any rights or claims of our client.

Best Regards,

 /s/ Veronika Balbuzanova
Veronika Balbuzanova, Esq.
*Associate Attorney*

**Johnson | Dalal®**
**Patents  Trademarks Copyrights**
111 N. Pine Island Road
Suite 105
Plantation, FL 33324
Office:  (954) 507-4500
Fax:      (954) 507-4502
www.PatentandTrademarkLaw.com

**NOTICE: This communication and any attachment contains confidential information that may be legally privileged and may be offered in associated with a settlement communication (under Fed. R. Evid. 408, or state equivalent).  Therefore, if you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this communication or any attachments to it and/or said communication may only be used in connection with its intended purpose.  If you have received this communication in error, please notify us immediately by a reply communication and/or by telephone at 954.507.4500 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.**

# EXHIBIT H

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL COURT
## IN AND FOR BROWARD COUNTY
## CIVIL DIVISION

SOCIAL ATHLETE d/b/a
SETH HOLBROOK FITNESS, LLC

      Plaintiff,

vs.

MYCOL AKHILE

      Defendant.

_____/

## PLAINTIFF'S CIVIL COMPLAINT AND
## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

      Plaintiff Seth Holbrook Fitness, LLC, by and through undersigned counsel, hereby

submits its Civil Complaint against Defendant Mycol Akhile and for the causes of action alleges

as follows:

### JURISDICTION AND VENUE

1. This is an action by Plaintiff against Defendant for breach of contract and copyright

      infringement.

2. Venue is appropriate in Broward County because the acts or omissions related to

      Plaintiff's cause of action arose in the Circuit.

3. This Court has jurisdiction over the matter as the Plaintiff's allegations touch on

      violations of Florida state law.

### PARTIES

# EXHIBIT I

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY
### CIVIL DIVISION

SOCIAL ATHLETE d/b/a
SETH HOLBROOK FITNESS, LLC

      Plaintiff,

vs.

REX CAMPBELL,
Defendant.

_____/

## PLAINTIFF'S CIVIL COMPLAINT AND
## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

      Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC hereby submits its Civil

Complaint against Defendant Rex Campbell and for the causes of action alleges as follows:

### JURISDICTION AND VENUE

1. This is an action by Plaintiff against Defendant for breach of contract and copyright
   Infringement.
2. Venue is appropriate in Broward County the acts or omissions related to Plaintiff's cause
   of action arose in the Circuit.
3. This Court has jurisdiction over the matter as the Plaintiff's allegations touch on
   violations of Florida state law.

### PARTIES

1

4. Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC (Hereinafter "Plaintiff"), is an entity licensed to do business in the state of Florida.

5. Defendant Rex Campbell (Hereinafter "Defendant") is a U.S. citizen.

## FACTUAL ALLEGATIONS

6. Defendant and Plaintiff entered into contract in October 2022 for Plaintiff to provide Defendant management consultation and production. Such agreement is attached to this Complaint.

7. As a covenant in the retention agreement, Defendant agreed that Plaintiff would own the copyright to all content produced under the agreement between the parties.

8. Plaintiff relied on these promises, and would not have entered into this agreement with Defendant unless said promises were upheld.

9. Defendant breached his agreement with Plaintiff on October 28th, 2022 by failing to uphold the covenants in his management retention agreement, and further, continued and continues to date to publish copyrighted material on a 3rd party website without the consent or permission of Plaintiff.

10. Defendant's actions in publishing the copyrighted material injure and continue to injure Plaintiff to date, and Plaintiff pleads with the Court to enter a temporary and/or permanent injunction against Defendant.

## COUNT I - DEMAND FOR INJUNCTION

11. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 10 as if set forth herein in full.

12. Defendant has violated and continues to violate his contractual duties to date.

13. The Plaintiff is uniquely damaged by the dissemination of its copyrighted material by the Defendant without express permission.

14. Defendant's conduct as alleged constitutes acts worthy of a temporary or permanent injunction preventing the further injuring of Plaintiff's business.

15. A temporary injunction prior to a hearing on any permanent injunction would be proper in this instance, and when balancing the equities, would not unduly burden the Defendant.

WHEREFORE, Plaintiff demands a temporary and/or permanent injunction enjoining the Defendant from any further injurious behavior against the Plaintiff's business.

## COUNT II - BREACH OF CONTRACT

16. Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

17. Defendant and Plaintiff entered into contract with one another in October 2022.

18. Defendant materially breached his contract with the Plaintiff, and said breach has materially injured Plaintiff to date.

19. In particular, the dissemination of copyrighted material without permission to a 3rd party site, contrary to the explicit covenants of the management retention agreement, is the aforesaid breach in this instance.

20. This Court has the requisite authority to make Plaintiff whole from Defendant's breach of Contract.

WHEREFORE, Plaintiff demands damages for the breach of contract in this matter.

## COUNT III - COPYRIGHT INFRINGEMENT

21. Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

22. Defendant and Plaintiff engaged in contract.

23. Within that contract were provisions providing the Plaintiff with exclusive copyright authority over the published material in its agreement with Defendant.

24. The Defendant has breached said agreement, and has infringed on the Plaintiff's copyright rights by disseminating protected copyright material which is the lawful property of the Plaintiff.

WHEREFORE, Plaintiff demands damages for copyright infringement in this matter against the Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in its favor and award it the following relief:

a.  All economic benefits lost as a result of Defendant's wrongful acts;
    Compensatory damages to fully compensate Plaintiff for its injuries caused by the Defendant's breach of contract;

b.  An Order temporarily and/or permanently enjoining Defendant from any further unauthorized content usage;

c.  Pre- and post-judgment interest; and,

d.  Such other relief this Court deems just and proper, together with Plaintiff's costs and disturbances in this action.

Respectfully submitted on November 29th , 2022.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that after filing, a copy of the Civil Complaint was served upon the Defendant via Florida process server.


S/Attorney Trescot J. Gear
Trescot J. Gear, Esq.
Fla Bar No. 118216

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841F0



## Social Media Agency

### Service Contract

This Service Contract ("Contract"), dated as of 20th day of October, 2022, is between Rex Michael Campbell (The "TALENT") and Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE ("COMPANY") and shall be collectively referred to as the "PARTIES."

**Recitals:**

WHEREAS the TALENT is in the business of producing, marketing and selling content on various online platforms, including but not limited to, TALENT's own website(s), Instagram, TikTok, Snapchat, OnlyFans.com, and various other social media platforms and

WHEREAS COMPANY is experienced and skilled in social media marketing, promotion, content creation, videography, photography, video and photo editing, social media management, business consultation, paid content deployment, paid content creation, paid content sales, and the general operation of subscription platforms including but not limited to TIKTOK, YouTube, Facebook, Instagram, Snapchat, Patreon, OnlyFans.com and its accompanying App. ("Only Fans") and other platforms; and

WHEREAS the TALENT wishes to engage Company as a full-service production, management, marketing and consulting company for the TALENT for the purpose of providing the services as more full set forth herein.

WHEREAS, COMPANY offers the SERVICES listed herein, TALENT accepts the same and both parties provide consideration, specifically, TALENT agrees to pay the fees contained herein and COMPANY agrees to perform the SERVICES herein.

The PARTIES agree as follows:

### 1. DESCRIPTION OF SERVICES AND TALENT OBLIGATIONS

**(a) Engagement.** The TALENT hereby retains COMPANY to provide, and COMPANY agrees to provide the SERVICES described in subsection (b) below. TALENT agrees that this is an exclusive CONTRACT and TALENT may not hire any other Company, individual, or entity to perform the same SERVICES as COMPANY.

5

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841FD

**(b) Services.** COMPANY shall use reasonable commercial efforts, in good faith to perform the following (the "SERVICES"), in a timely and professional manner, in accordance with standards prevailing in the TALENT's and COMPANY's industry, and in accordance with applicable laws, rules and regulations:

a. Assist and guide Talent on scaling their online business and social media presence and aid in facilitation of all content that is posted on social media including, but not limited to, subscription platforms such as OnlyFans.com, Patreon, or any other Platform that PARTIES are now aware of or become aware of, by providing practical advice to TALENT.

b. COMPANY will work to assist TALENT with promoting the products and content TALENT offers on their personal site(s), social media, OnlyFans.com, and any other Platform that PARTIES are now aware of or become aware of and decide to use.

c. Company will regularly consult with TALENT on growing their online business, social media presence, and on what content TALENT should produce in order to fulfill customer orders on their website(s), platform(s), and OnlyFans.com. In situations where customer orders pertain to professionally produced content, COMPANY will assist TALENT in producing such content by performing filming, drafting and editing. In the event that the requested service exceeds the capability of COMPANY, COMPANY may, at its discretion, hire third parties to complete this function and will be entitled to reimbursement by the TALENT for the costs incurred.

d. COMPANY will use good faith efforts to assist in the removal of any and all unauthorized publication of works produced as a result of this CONTRACT.

e. In the performance of the SERVICES, COMPANY will serve the TALENT in good faith, ensuring, within its reasonable control, that it is:

   i. protecting the TALENT's interests consistent with the purpose of this CONTRACT;
   ii. observing all applicable laws related to the TALENT's activities; and
   iii. acting in accordance with professional production and management practices;

f. COMPANY will use good faith efforts to communicate regularly with the TALENT concerning progress COMPANY has made in performing the SERVICES.

6

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841FO

**(c) TALENT's Obligations.** The TALENT shall comply with all applicable laws, rules and regulations applicable hereto. The TALENT shall not engage in any activity or post any content that:

    a. Constitutes or promotes illegal activity or violates any applicable laws or regulations;

    b. infringes, violates or misappropriates any third-party intellectual property rights, including copyright, trade secrets or trademarks, publicity and/or privacy rights, is libelous, defamatory, abusing, harassing, or threatening, or in any way causes legal or actual damage to others;

    c. contains any obscene, racist or otherwise offensive material or language as defined by such platforms terms and conditions, guidelines, and the like;

    d. exploits or harms children, directly or indirectly, including by exposing them to inappropriate material or asking them for any personal-information or remuneration;

    e. links to any third-party sites or services that would violate the standards and terms contained within this CONTRACT.

    f. The TALENT shall not advertise other paid media outlets(i.e. MyfreeCams, Fan Centro or Paid Snap) using their OnlyFans account during the term of this CONTRACT unless authorized in writing by COMPANY.

    g. The TALENT shall not engage in deceptive trade practices or otherwise violate Federal Trade Commission Regulations.

    h. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.

    i. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.

## 2. COMPENSATION

**(a) Management Fee.** During the Term, COMPANY shall be entitled to a fee equal to 20% (Twenty percent) of the gross revenue (pre-tax, pre-costs, and without deduction of any third party processors or OnlyFans fees directly or any other commissions or fees) whether fixed or contingent, received or accrued. Compensation and any other form of remuneration or revenue in whatever form including without limitation bonuses, deferments, participations and the like, contingent or otherwise, sponsorships, advertising, merchandise, commercial tie-ins, Endorsements, or any other opportunity to earn income arising from, or otherwise in connection with the SERVICES herein (collectively, the "Compensation"), are payable as received or accrued.

COMPANY shall further be entitled to its fee with respect to revenue received after the expiration of the Term if it is generated prior to expiration

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841FD

of the Term. It is agreed that all revenue received by TALENT within 30 days after expiration of the Term shall be attributed to COMPANY. If the TALENT's revenue increases by 50% or more during Term, the Term shall be automatically extended for an additional twelve (12) months from the would be end of the term contemplated under this CONTRACT. COMPANY, in its sole discretion, may choose not to renew. However, if no objection by COMPANY is made as to the renewal, all other terms herein shall remain in effect unless modified by subsequent writing and signed by both PARTIES.

**(b) Payment of the Fee.** The TALENT agrees to irrevocably direct third-parties as outlined below and to irrevocably authorize COMPANY on the TALENT's behalf to either:

    **a.** have the third parties pay to COMPANY the applicable Fee set forth above directly, deduct such amounts paid to Company from amounts of Compensation payable to the TALENT and then pay the TALENT the balance of the Compensation directly from the third parties, if the third parties so agree, **OR**

    **b.** if third parties do not so agree or are otherwise unable to, then it shall be the sole responsibility of the TALENT to, and TALENT agrees to, pay the Fee due to COMPANY on such compensation (as set forth above) immediately upon the earlier of receipt or accrual of the compensation no later than the 3rd of each month. TALENT shall send proof of monthly revenue no later than the 28th of each month with the 20% fee not then paid and COMPANY shall invoice the TALENT for such amounts but such invoice shall not be a condition precedent to the obligation to remit the Fee to COMPANY.

## 3. TERM AND TERMINATION

**(a) Initial Term and Automatic Subsequent Terms.** This CONTRACT is effective as of the date written above and shall continue for a term of one (1) year (the "Initial Term"), provided that if TALENT is entitled to Compensation of fifty thousand (50,000) dollars or more during the Initial Term or Revenue is increased by more than 50% as outlined above, the Initial Term shall be automatically extended for an additional period of twelve (12) months. If TALENT is entitled to Compensation of two hundred thousand ($200,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of two (2) years. If TALENT is entitled to Compensation of one million (1,000,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of three (3) years. Each extension shall be considered an "Additional Term"

Unless the Talent gives written notice to Company at least ninety (90) days before the end of the Initial Term or Additional Term, as applicable, this CONTRACT will renew automatically for additional, successive one (1) year

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841F0

periods (each, an "Additional Term" and together with the Initial Term, collectively, the "Term").

**(b) Termination.** This CONTRACT may be terminated immediately and without notice upon discretion by COMPANY, with or without cause WITHOUT REMEDY TO TALENT, and may be terminated by Talent on ninety (90) days prior written notice for a material breach of this CONTRACT. TALENT shall cause notice upon COMPANY in writing describing the material breach with sufficient detail so as to allow COMPANY to correct the breach. COMPANY shall then have thirty (30) days from proper notice to correct alleged breach. If breach is cured, TALENT shall not be entitled to freely terminate this CONTRACT without consequence. In the event of early Termination by TALENT, compensation due to COMPANY shall continue to be paid until what would be the end of the Initial or additional Term but for the termination, whichever is later. This compensation shall be projected based on the highest month of income then achieved and multiplied by the number of months in the term and is due immediately. Example of this calculation is provided in section 12(b). If the projected value is lower than the actual value, TALENT shall be required to remit payment based on the actual amount as received or accrued but offset by the prior projected payment.

## 4. NATURE OF RELATIONSHIP

**(a) Independent Contractor.** The relationship of the parties under this CONTRACT is one of independent contractors, and no joint venture, partnership, agency, employer-employee, or similar relationship is created in or by this CONTRACT. Neither party may assume or create obligations on the other party's behalf, and neither party may take an action that creates the appearance of such authority, EXCEPT, COMPANY shall have the requisite authority to carry out its duties under this CONTRACT. TALENT is responsible for paying their own tax obligations created from the execution of this CONTRACT.

**(b) Control.** Company has the sole right to control and direct the means, details, manner, and method by which the SERVICES will be performed, and the right to perform SERVICES at any time, place, or location. COMPANY shall perform the SERVICES and TALENT is not required to hire, supervise, or pay any assistants to help COMPANY with respect thereto. Further TALENT shall not be permitted to hire, supervise, or pay any assistants to help COMPANY with respect thereto without prior written approval from COMPANY.

## 5. TALENT'S INTELLECTUAL PROPERTY

9

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841FD

(a) **Reproduction and Distribution.** TALENT grants COMPANY a NON-EXCLUSIVE irrevocable license so that COMPANY may use, reproduce, and distribute the TALENT's service marks, trademarks, and trade names, or any other intellectual property belonging to TALENT (collectively the "TALENT MARKS") in connection with the performance of the SERVICES. Sole license in this section is intended to mean that, other than TALENT, COMPANY shall be the sole party with authority to use TALENT's intellectual property.

(b) **Ownership Retention.** Any goodwill or other value generated or received from the use contemplated under 5(a) will accrue to the TALENT and TALENT shall remain the sole owner of the TALENT MARKS. COMPANY may not engage in activities or commit acts, directly or indirectly, that may contest, dispute, or otherwise impair the TALENT's interest in the TALENT MARKS. COMPANY may not apply for, acquire, or claim any interest in any TALENT MARKS, or other intellectual property that may be confusingly similar to any of the TALENT MARKS.

(c) **Copyright Ownership.** Any and all copyrights which may exist or come into being with respect to any and all content created by COMPANY on behalf of the TALENT and/or content created by TALENT at the instruction of COMPANY shall be the property of COMPANY. To the fullest extent permitted by law, TALENT hereby assigns any copyright which now exists and agrees to assign copyright he/she may acquire in any content created or posted on social media or online platforms to the COMPANY for the duration of the copyright and any extensions thereof. TALENT agrees to execute all necessary documents including a power of attorney to complete the transfer and assign any copyright interest of TALENT in content produced by COMPANY to COMPANY. It is expressly agreed that works created by COMPANY under this CONTRACT shall belong solely to COMPANY. A failure to execute necessary documents under this provision by TALENT shall be considered a breach and liquidated damages of $25,000 per occurrence shall be paid.

## 6. CONFIDENTIAL INFORMATION

(a) **TALENT's Confidential Information Defined.** During the Term, COMPANY may have access to or receive certain information of or about the TALENT that the TALENT designates as confidential in writing or that, under the circumstances surrounding disclosure ought to be treated as confidential, in the discretion of the COMPANY, by the COMPANY. This shall be referred to as "Confidential Talent Information". Confidential Talent Information includes identifying information relating to the TALENT or its current or proposed business, products, endorsements, sponsorships, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media.

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841FD

**(b) COMPANY's Handling of Confidential Information.** COMPANY will treat the Confidential Talent Information as confidential, meaning, it will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT. In addition, COMPANY shall use reasonable care and diligence to prevent the unauthorized use or disclosure of such information by COMPANY's agents or employees.

**(c) Limitations of Obligations under this section.** The obligations and restrictions in this section do not apply to that part of the Confidential Talent Information that: (i) was or becomes publicly available other than as a result of a disclosure by COMPANY in violation of this CONTRACT; (ii) was or becomes available to COMPANY on a nonconfidential basis before its disclosure to COMPANY by the TALENT, but only if: (1) the source of such information is not bound by a confidentiality CONTRACT with the TALENT or is not otherwise prohibited from transmitting the information to COMPANY by a contractual, legal, fiduciary, or other obligation; and (2) COMPANY provides the TALENT with written notice of its prior possession either (I) before the effective date of this CONTRACT or (II) if COMPANY later becomes aware (through disclosure to COMPANY) of any aspect of the Confidential Talent Information as to which COMPANY had prior possession, promptly on COMPANY so becoming aware; (iii) is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, COMPANY shall: (1) provide the TALENT with prompt notice of these requests or requirements before making a disclosure so that the TALENT may seek an appropriate protective order or other appropriate remedy; and (2) provide reasonable assistance to the TALENT in obtaining any protective order. If a protective order or other remedy is not obtained or the TALENT grants a waiver under this CONTRACT, COMPANY may furnish that portion (and only that portion) of the Confidential Talent Information that is, in the written opinion of counsel reasonably acceptable to the TALENT or that COMPANY is legally compelled or otherwise required to disclose. However, COMPANY shall make reasonable efforts to obtain reliable assurance that confidential treatment will be afforded to any part of the Confidential Talent Information disclosed in this way or was developed by COMPANY independently without breach of this CONTRACT.

**(d) COMPANY's Confidential Information Defined.** During the Term, the TALENT may have access to or receive certain information of or about COMPANY that COMPANY designates as confidential or that, under the circumstances surrounding disclosure ought to be treated as confidential by the Talent ("Confidential Company Information"). Confidential Company Information includes but is not limited to advice given to TALENT in the performance of COMPANY's SERVICES, information relating to COMPANY or its current or proposed business, promotion techniques, financial statements, budgets and projections, customer identifying information,

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841FD

employers, consultants, vendors, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The TALENT will treat the Confidential Company Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT.

(e) **TALENT's Handling of COMPANY Confidential Information.** TALENT shall use due care and diligence to prevent the unauthorized use or disclosure of such information. For the avoidance of doubt, the TALENT shall treat this CONTRACT as Confidential Company Information.

(f) **Liquidated Damages.** The parties agree that in the event of a breach of the confidential provisions, it would be impracticable and extremely difficult to ascertain the amount of actual damages or fix actual damages. Therefore, it is agreed that in the event of such a breach, the TALENT shall pay, as liquidated damages, and not as penalty, the sum of Twenty-Five Thousand Dollars ($25,000.00) for each breach. Because the injury or injuries that the COMPANY may sustain by reason of the breach may not be readily ascertainable and not easily proved, the foregoing amount is understood and agreed by the parties as reasonable liquidated damages and is intended as compensation and not as a penalty for the injury or injuries suffered and the loss incurred because of such a breach. In an action initiated by COMPANY to enforce any of the provisions of this CONTRACT or to seek damages for breach of the provisions of this CONTRACT, the COMPANY shall be entitled to recover reasonable attorney's fees.

## 7. Non-Competition or Interfere Covenant.

The TALENT and the COMPANY acknowledge that the COMPANY's reputation and goodwill in the community constitutes a protected interest of the COMPANY. The TALENT further acknowledges that the COMPANY has, and will continue to, invest time and money in the development, promotion, and support of the TALENT. The TALENT further acknowledges that the TALENT will have gained valuable experience, skill, promotion, notoriety, and ability due to COMPANY's efforts and talent. The TALENT recognizes and acknowledges the COMPANY's need for protection against the TALENT's exploitation of said experience, skill, promotion, and ability to the detriment (or possible detriment) of the COMPANY subsequent to the termination or expiration of this CONTRACT and that a violation of the covenants contained herein on the part of the TALENT will (and can) cause the COMPANY irreparable harm.

The TALENT further acknowledges that the COMPANY's willingness to contract with TALENT is contingent upon the TALENT's agreement to be bound by

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841FO

this Non-Competition/Non-Competition Covenant. The TALENT acknowledges that, if its engagement with the COMPANY terminates for any reason, the TALENT will be able to earn a livelihood without violating the foregoing restrictions, and the TALENT's agreement to be bound by the provisions of this CONTRACT is a material condition to COMPANY's entrance into this CONTRACT. TALENT agrees that due to the proprietary nature of COMPANY'S business, the restrictions set forth in this Agreement and the Confidentiality and Non-Competition Covenant, are reasonable in duration and scope.

Accordingly, the TALENT covenants that in the event of termination of this Agreement for any reason, the TALENT, shall not, during the Non-Compete period, and in the Territory:

a) directly or indirectly solicit, induce, recruit, encourage, hire, or take away any of the COMPANY's employees, agents, or contractors of whom the TALENT became aware through the TALENT's engagement with the Company; it being understood that this prohibition extends to every employee, agent, or contractor of COMPANY engaged during the time of the TALENT's engagement with the COMPANY, whether or not such employee, agent, or contractor is still engaged by the COMPANY at the time of the prohibited solicitation or hiring;

b) directly or indirectly solicit, induce, recruit, encourage, or take away clients or customers of the COMPANY of whom the TALENT became aware of through the TALENT's engagement with the Company; it being understood that this prohibition extends to every client or customer of the COMPANY up to the time of termination or expiration of this CONTRACT;

c) directly or indirectly compete with the COMPANY in any manner whatsoever, for itself or any other person or firm, including, but not limited to, as an employee, independent contractor, consultant, member, partner, investor, principal owner, joint venture, agent, trustee, or director of any entity, firm or company which provides the same SERVICES as COMPANY, including, but not limited to, digital marketing services, including, but not limited to social media marketing, promotion, content creation, videography, photography, video and photo editing, social media management, business consultation, paid content deployment, paid content creation, paid content sales, and the general operation of subscription platforms including but not limited to TikTok, YouTube, Facebook, OnlyFans.com and other social media platforms.

The "Non-Compete Period" will begin 30 days after the date of this Agreement and will end one (1) year following the termination or expiration of this CONTRACT. If COMPANY or TALENT terminates this CONTRACT within the first 30 day, the Non-Complete period will be

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841F0

reduced to 180 days but all other remaining terms of this Non-Compete shall remain the same.

"Territory" means all of the territory within radius of (75) miles of any of the COMPANY'S offices or offices of clients or customers of the COMPANY.

TALENT agrees that if a court of law finds that any the provisions of this Section 7 are invalid or unenforceable, then such court of law shall not declare this Section 7 as unenforceable but shall impose and enforce such time and geographic limitations which are reasonable based upon authoritative precedent and then industry standards and enforceable by the court. In the event TALENT breaches the terms of this Section 7, it is agreed that all time periods contained in this Section 7 shall be tolled until such time as the breach of this CONTRACT by TALENT: (i) ceases or (ii) has been finally adjudicated by a court of competent jurisdiction. In the event TALENT breaches the terms of this Section 7, COMPANY will be entitled to preliminary and permanent injunctive relief, monetary damages, and attorneys' fees and costs incurred in enforcing COMPANY's rights under this CONTRACT.

## 8. FORCE MAJEURE

(a) If the TALENT fails, refuses or is unable for any reason whatsoever, which cannot be overcome by due diligence, to render services hereunder or if production of the TALENT's services is interrupted or materially interfered with because of any force majeure events (e.g., any labor dispute, strike, lock-out, fire, war, act-of-God, epidemic, pandemic, governmental action or proceeding, injunction, illness, disability, death or other material interference with the production of the Talent's services or any other event beyond the Talent's and/or Company's control, the Term of this CONTRACT shall be extended for by a period equal to the duration of any such failure, refusal, or inability or the occurrence of any of the foregoing events. Either party shall be excused from such performance to the extent that either party's respective obligations are necessarily prevented, hindered or delayed during the continuance of any such happening or event and this contract shall be deemed suspended except to the extent that the CONTRACT may still be performed, including payment of the fee to COMPANY. Strictly economic conditions may not be used in excusing obligations arising herein.

## 9. REPRESENTATIONS AND WARRANTIES

(a) TALENT's Representations and Warranties. The TALENT represents and warrants as follows: (i) that the TALENT has the right to enter into this CONTRACT and that the consent of no other party is necessary with respect thereto; and (ii) that the TALENT is not subject to any conflicting obligations or disabilities, which will prevent or interfere with the execution and performance of this CONTRACT.

14

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841FD

**(b) COMPANY's Representations and Warranties.** The COMPANY makes no warranties or representations beyond what is stated within this CONTRACT. Specifically, COMPANY makes no warranty or representation with respect to the amount of compensation that The TALENT will generate in connection with COMPANY's SERVICES pursuant to this CONTRACT and nothing contained herein shall be construed to obligate COMPANY to take any further action to maximize such compensation. COMPANY only warrants that it will provide, in its best judgement, advice to accomplish the SERVICES in 1(b). Nothing contained in this CONTRACT shall be construed as creating a fiduciary relationship between COMPANY and TALENT.

## 10. INDEMNITY

**(a) General.** THE TALENT SHALL INDEMNIFY AND HOLD HARMLESS COMPANY, ITS PARENT, SUBSIDIARIES, SUCCESSORS, LICENSEES AND ASSIGNS AND ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, TRUSTEES OR REPRESENTATIVES AGAINST ANY AND ALL LIABILITY, DAMAGES, COSTS AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE OUTSIDE ATTORNEYS' FEES AND COSTS, IN CONNECTION WITH ANY THIRD PARTY CLAIM OR ACTION ARISING OUT OF THE UNCURED MATERIAL BREACH OF ANY OF THE TALENT'S REPRESENTATIONS, WARRANTIES, CONTRACTS, UNDERTAKINGS OR CERTIFICATIONS HEREUNDER, INCLUDING BUT NOT LIMITED TO A BREACH BY THE TALENT OF THE CONFIDENTIALITY AND NON-DISCLOSURE PROVISIONS, OR MATERIAL SUPPLIED TO COMPANY BY THE TALENT, OR MATERIAL INCORPORATED BY COMPANY ON BEHALF OF OR AT THE REQUEST OF THE TALENT IN ANY PRODUCTION, PHOTO SHOOT, ETC. FOR USE IN THE PERFORMANCE OF THE TALENT'S SERVICES HEREUNDER; OR THE DEVELOPMENT, PRODUCTION, ADVERTISING, PROMOTION, DISTRIBUTION AND/OR EXPLOITATION OF THE TALENT'S CONTENT OR ELEMENTS THEREOF OR ANCILLARY THERETO. TALENT EXPLICITLY AGREES TO INDEMNIFY COMPANY IN THE EVENT THAT TALENT PROVIDES INTELLECTUAL PROPERTY TO COMPANY THAT TALENT IS NOT AUTHORIZED TO PROVIDE EVEN IN THE PRESENCE OF NEGLIGENCE ON THE PART OF THE COMPANY IN USING, POSTING, OR PRODUCING IT ANY WAY. TALENT FURTHER AGREES TO INDEMNIFY COMPANY IN THE EVENT THAT POSTS OR THE LIKE VIOLATE APPLICABLE LAWS OR REGULATIONS INCLUDING BUT NOT LIMITED TO THE FEDERAL TRADE COMMISSION AND STATE LAWS AND CAUSES DAMAGES, INCLUDING THE COST TO DEFEND. THIS INDEMNIFICATION BY TALENT ALSO COVERS IMPROPER SALES TO MINORS.

**(b) Retention Of Control & Indemnity.** COMPANY AND THE TALENT SHALL, UPON PRESENTATION OR INSTITUTION OF ANY CLAIM OR

15

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841FD

ACTION COVERED BY THE FOREGOING INDEMNITY, PROMPTLY NOTIFY THE OTHER OF THE CLAIM OR ACTION, GIVING THE DETAILS THEREOF. ALL ASPECTS OF THE DEFENSE OF SUCH CLAIMS OR ACTIONS, WHETHER AS PART OF ANY LITIGATION, NEGOTIATION OR OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY DECISION REGARDING SETTLEMENT), SHALL BE CONTROLLED BY COMPANY. COMPANY SHALL BE FREE TO USE COUNSEL OF COMPANY'S CHOICE IN CONNECTION THEREWITH. COMPANY'S CONTROL SHALL NOT DIMINISH THE TALENT'S OBLIGATIONS UNDER PARAGRAPH 9 (A) ABOVE. THE TALENT SHALL REASONABLY COOPERATE IN THE DEFENSE OF ANY CLAIM OR ACTION FOR WHICH INDEMNIFICATION IS PROVIDED HEREUNDER AND SHALL HAVE THE RIGHT (AT THE TALENT'S EXPENSE) TO HAVE COUNSEL PRESENT IN CONNECTION THEREWITH, PROVIDED SUCH COUNSEL FULLY COOPERATES WITH COMPANY'S COUNSEL AND DOES NOT INTERFERE WITH THE REASONABLE HANDLING OF THE CLAIM OR ACTION BY COMPANY. COMPANY SHALL NOT SETTLE ANY SUCH CLAIM(S) ADVERSE TO THE TALENT WITHOUT THE TALENT'S PRIOR WRITTEN APPROVAL AND SAID APPROVAL MAY NOT BE UNREASONABLY WITHHELD.

## 11. ASSIGNMENT

(a)   **General**. COMPANY may unilaterally assign, license and/or delegate this CONTRACT (in whole or in part) to any entity, individual, parent, subsidiary or affiliated corporation of Company, or to any entity with or into which COMPANY merges or consolidates, or which succeeds to all or a substantial portion of COMPANY's assets. This CONTRACT and any or all of said rights, obligations, options, privileges and/or services shall inure to the benefit of and may in turn be freely licensed or assigned by, any such assignee, successor, transferee or delegate. The services to be rendered by the TALENT hereunder are personal to the TALENT and of the essence of this CONTRACT. Neither this CONTRACT nor any of the TALENT's rights or obligations hereunder may be assigned, delegated or otherwise transferred by the TALENT; EXCEPT that the TALENT may assign the right to receive the Compensation due from COMPANY at any time. Any such assignment shall at all times be subject to all of COMPANY's rights hereunder. Any assignment shall be evidenced in writing and provided to the other party promptly.

## 12. NOTICES

(a)   **General**. Unless otherwise provided herein, all notice from the TALENT shall be in writing and shall be sent to the address set forth below (subject to changes of which the parties are notified in writing). Notices from TALENT shall be given by registered or certified mail (postage

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841FO

prepaid), and shall be deemed given on the date delivered. The time to respond to notices given during the week in between Christmas Eve and New Year's Day shall be tolled until five (5) business days following New Year's Day. Until further notice, the addresses of the company shall be as follows:

**COMPANY's ADDRESS FOR NOTICE:**
<u>39939 Pretty Pond Road Zephyrhills FL 33540</u>

**TALENT's ADDRESS FOR NOTICE:**
<u>15555 Huntington Village Lane Apt 84 Huntington Beach California 92647</u>

## 13. MISCELLANEOUS

**(a)     Entire CONTRACT, Severability and Counterparts.**  This CONTRACT expresses the entire understanding of the parties hereto and replaces any and all former CONTRACTs or understandings, written or oral, relating to the subject matter hereof. This CONTRACT may not be modified except by a written instrument signed by the parties. Nothing herein contained shall be construed so as to require the commission of any act contrary to law, and if there is any conflict between any provision of this CONTRACT and any present or future statute, law, ordinance, regulation or provision of any applicable collective bargaining CONTRACT contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision of this CONTRACT affected shall be curtailed and limited only to the extent necessary to make it consistent with such legal requirements or provisions. This CONTRACT may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the CONTRACT.

**(b)     Delivery of Further Instruments.** The TALENT will execute, acknowledge and deliver to COMPANY or cause to be executed, acknowledged and delivered to COMPANY, all further agreements and instruments consistent with this CONTRACT which Company may deem necessary to carry out and effectuate the purpose of this CONTRACT. If TALENT shall fail for any reason to execute and deliver within five (5) business days of Company's written request, that will be considered a material breach. A material breach as described here shall require full payment of all compensation under the CONTRACT through the end of the term(s) as liquidated damages, in addition to damages under 6(f). For each month of the term not yet past, the compensation shall be based on the highest month then achieved. For example, if only 2 months have passed in the twelve-month term and the higher of the 2 months is $10,000, then the remaining months in the term shall all be paid as though $10,000 was earned. Except that, if additional money is earned by TALENT in the subsequent term than paid herein, COMPANY shall be

DocuSign Envelope ID: 2CDB974B-7292-408C-9A7B-5FAE19C841FD

prepaid), and shall be deemed given on the date delivered. The time to respond to notices given during the week in between Christmas Eve and New Year's Day shall be tolled until five (5) business days following New Year's Day. Until further notice, the addresses of the company shall be as follows:

**COMPANY's ADDRESS FOR NOTICE:**
**39939 Pretty Pond Road Zephyrhills FL 33540**

**TALENT's ADDRESS FOR NOTICE:**
15555 Huntington Village Lane Apt 84 Huntington Beach California 92647

## 13. MISCELLANEOUS

**(a)    Entire CONTRACT, Severability and Counterparts.**  This CONTRACT expresses the entire understanding of the parties hereto and replaces any and all former CONTRACTs or understandings, written or oral, relating to the subject matter hereof. This CONTRACT may not be modified except by a written instrument signed by the parties. Nothing herein contained shall be construed so as to require the commission of any act contrary to law, and if there is any conflict between any provision of this CONTRACT and any present or future statute, law, ordinance, regulation or provision of any applicable collective bargaining CONTRACT contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision of this CONTRACT affected shall be curtailed and limited only to the extent necessary to make it consistent with such legal requirements or provisions. This CONTRACT may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the CONTRACT.

**(b)    Delivery of Further Instruments.** The TALENT will execute, acknowledge and deliver to COMPANY or cause to be executed, acknowledged and delivered to COMPANY, all further agreements and instruments consistent with this CONTRACT which Company may deem necessary to carry out and effectuate the purpose of this CONTRACT. If TALENT shall fail for any reason to execute and deliver within five (5) business days of Company's written request, that will be considered a material breach. A material breach as described here shall require full payment of all compensation under the CONTRACT through the end of the term(s) as liquidated damages, in addition to damages under 6(f). For each month of the term not yet past, the compensation shall be based on the highest month then achieved. For example, if only 2 months have passed in the twelve-month term and the higher of the 2 months is $10,000, then the remaining months in the term shall all be paid as though $10,000 was earned. Except that, if additional money is earned by TALENT in the subsequent term than paid herein, COMPANY shall be

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841F0

entitled to the difference, but in no event shall COMPANY be responsible to return any of the liquidated damages payments.

(c) **The TALENT's Services are Unique; Remedies.** The TALENT's services are extraordinary and unique and not replaceable. There is no adequate remedy at law for a material breach of this Agreement by the Talent. In the event of a material breach by the TALENT, COMPANY shall be entitled to seek equitable relief by way of injunction or otherwise. If the Courts so determine that an order causing the TALENT to perform cannot be supported by law or CONTRACT, then TALENT agrees to pay the liquidated damages as described in the Termination Section of this Contract. Under no circumstances may the TALENT seek equitable relief against COMPANY, all such rights being waived. The TALENT acknowledges and agrees that exemplary or punitive damages shall not be recoverable under any circumstance for any claim arising hereunder or in connection herewith. The TALENT's sole remedy in the event of a breach or alleged breach of any provision of this CONTRACT shall be an action for money damages in accordance with the dispute resolution provisions set forth below. Under no circumstances shall the TALENT be entitled to recover consequential or expectancy damages of any kind, to terminate, revoke, or rescind this CONTRACT, or to obtain any injunctive or other equitable relief in connection with this CONTRACT. The TALENT irrevocably relinquishes, waives, releases and disclaims any right, at any time, to any such injunctive or other equitable relief.

(d) **Publicity Restrictions/Non-Disclosure.** The TALENT shall not, without COMPANY's prior written approval, (i) issue or authorize the publication of any news story, publicity or publicity materials relating the TALENT's services hereunder, or COMPANY or its affiliates, (ii) make any derogatory or knowingly false statements concerning COMPANY or any officers, employees or affiliates of COMPANY, (iii) disclose any confidential information regarding COMPANY or its affiliates other than to business representatives, attorneys and as required by law, including, but not limited to, the nature of the SERVICES COMPANY provides or how it operates the TALENT's accounts, or (iv) encourage any other individual to do any of the foregoing; provided, however, the TALENT may issue personal publicity primarily concerning the TALENT in which the COMPANY or any officers or employees of COMPANY are mentioned incidentally, so long as such references are not derogatory or knowingly false, are limited to reporting factual events or occurrences only, do not contain any confidential information and are made in a manner that could not reasonably constitute an endorsement of the TALENT.

(e) **Governing Law** This CONTRACT shall be governed by the laws of the State of Florida with venue being in the closest court of competent jurisdiction to COMPANY.

19

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841F0

**(f)**   **Disputes and Resolution** The parties will attempt in good faith to resolve any controversies, claims or disputes arising out of or related to this CONTRACT or the interpretation, performance or breach thereof including, but not limited to, alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this CONTRACT.

If the parties are unable to reach a mutually acceptable resolution within thirty (30) days after either party gives the other party written notice of a Dispute, then such Disputes, except as set forth in Paragraphs 12(f)(ii) below, shall be resolved according to the procedures set forth in Paragraph 12(f)(i) below, which shall constitute the sole dispute resolution mechanism hereunder.

**(i)**   **Mediation Then Arbitration:** All Disputes shall be mediated with costs borne equally within 60 days of a failure to resolve disputes under 12(f). If mediation is unsuccessful then binding arbitration shall occur in the same county as the COMPANY. The Arbitration shall be initiated and conducted according to either JAMS Streamlined or Comprehensive Arbitration Rules and Procedures, or other similar procedure except as modified herein. The arbitration shall be conducted before a single neutral arbitrator with at least 10 years entertainment experience. The Arbitrator shall follow Florida law and Florida rules of evidence in adjudicating the Dispute. Parties agree to waive rights to punitive damages and agree that Arbitrator shall not have authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. Unless the parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any Florida state or federal court with experience in matters involving the entertainment industry. Costs for the Arbitrator shall be borne equally. Each party shall be responsible for its own attorney fees. Judgment upon the award may be entered in any court of competent jurisdiction.

**(ii)**   **Jurisdiction and Venue.** Any dispute or part thereof or any claim for a particular form of relief (not otherwise precluded by any other provision of this agreement), that may not be arbitrated pursuant to applicable law may be heard only in a court of competent jurisdiction and the Venue shall be the closest court with jurisdiction to COMPANY's address listed above. Parties hereby submit to the exclusive jurisdiction and venue of the local, state and federal courts located in the county in which COMPANY is based.

DocuSign Envelope ID: 2CDB974B-7292-406C-9A7B-5FAE19C841FD

(g) **Advice of Counsel.** EACH PARTY ACKNOWLEDGES THAT IN EXECUTING THIS CONTRACT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS CONTRACT. THIS CONTRACT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

**THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT AS OF THE DATE FIRST SET FORTH ABOVE.**

**TALENT**
By: _____
Rex Michael Campbell
(Print Name): _____
Date: 10/18/2022

**Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE**
By: _____
CEO
Its: (Position) _____
**Authorized Signatory Seth Holbrook**



COPYRIGHT ALL RIGHTS RESERVED

21

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY
## CIRCUIT CIVIL DIVISION

SOCIAL ATHLETE d/b/a
SETH HOLBROOK FITNESS, LLC

      Plaintiff,

vs.

COLIN CARPENTER,

      Defendant.

_____/

## PLAINTIFF'S CIVIL COMPLAINT AND
## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC hereby submits its Civil

Complaint and Request for Temporary or Permanent Injunction against Defendant Colin Carpenter

and for the causes of action alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action by Plaintiff against Defendant for breach of contract, and an action

seeking temporary and permanent injunction against Defendant for wrongful acts, in excess of

$30,000.00.

2.     Venue is appropriate in Broward County because Plaintiff operates in the Circuit,

Defendant contracted with Plaintiff for exclusive venue in the Circuit, and the acts or omissions

related to Plaintiff's cause of action arose in the Circuit.

3.     This Court has jurisdiction over the matter as the Plaintiff's allegations touch on

violations of Florida state law.

### PARTIES

1

4.      Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC (Hereinafter "Plaintiff"), is an entity licensed to do business in the state of Florida.

5.      Defendant Colin Carpenter (Hereinafter "Defendant") is a U.S. Citizen and New Jersey resident.

### GENERAL FACTUAL ALLEGATIONS

6.      Defendant retained Plaintiff on October 17th, 2021 for Plaintiff to provide Defendant management consultation and production services.

7.      As a covenant in the October 2021 management retention agreement, Defendant agreed that Plaintiff would own the copyright to all content produced under the agreement between the parties.

8.      Plaintiff relied on these promises, and would not have entered into this agreement with Defendant unless said promises were upheld.

9.      Defendant breached his agreement with Plaintiff on January 28th, 2022 by failing to uphold the payment covenants in his management retention agreement, and further, continued and continues to date to publish copyrighted material on a 3rd party website without the consent or permission of Plaintiff. Defendant also refused to pay Plaintiff the monthly fee installment as required by the Agreement.

10.     Defendant's actions in publishing the copyrighted material injure and continue to injure Plaintiff to date, and Plaintiff pleads with the Court to enter a temporary and/or permanent injunction against Defendant.

### COUNT I- DEMAND FOR INJUNCTION

11.     Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

12.     Defendant has violated and continues to violate his contractual duties to date.

13.     The Plaintiff is uniquely damaged by the dissemination of its copyrighted material by the Defendant without express permission or payment.

14.     Defendant's conduct as alleged constitutes acts worthy of a temporary or permanent injunction preventing the further injuring of Plaintiff's business.

## COUNT II- BREACH OF CONTRACT

15.     Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

16.     Defendant and Plaintiff entered into contract with one another in October 2021.

`   17. Defendant materially breached his contract in January 2022, and said breach has materially injured Plaintiff to date.

18.     In particular, the failure to compensate the Plaintiff and the dissemination of copyrighted material without permission to a 3rd party site, contrary to the explicit covenants of the management retention agreement, are the aforesaid breaches in this instance.

19.     This Court has the requisite authority to make Plaintiff whole from Defendant's breach of contract.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff requests that the Court enter judgment in its favor and award it the following relief:

a.      All economic benefits lost as a result of Defendant's wrongful acts;

b.      Compensatory damages to fully compensate Plaintiff for its injuries caused by the Defendant's breach of contract;

c.      An Order temporarily and/or permanently enjoining Defendant from any further unauthorized content usage or copyright infringement;

d.      Pre- and post-judgment interest; and,

e.      Such other relief this Court deems just and proper, together with Plaintiff's costs and disbursements in this action.

Respectfully submitted on March 21st, 2022.

S/Trescot Gear
Attorney Trescot Gear
Florida Bar No. 118216
Gear Law, LLC
1405 West Swann Avenue
Tampa, FL 33606

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 21st day of March, 2022, that after filing, a copy of the Civil Complaint was served upon the Defendant via Florida process server.

S/Trescot Gear, Esq.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY
CIVIL DIVISION

SOCIAL ATHLETE d/b/a
SETH HOLBROOK FITNESS, LLC

Plaintiff,

vs.

ADAM CORONER,
Defendant.

_____/

## PLAINTIFF'S CIVIL COMPLAINT AND

## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC, by and through undersigned

counsel, hereby submits its Civil Complaint against Defendant Adam Coroner, and for the causes

of action alleges as follows:

## JURISDICTION AND VENUE

1. This is an action by Plaintiff against Defendant for breach of contract and copyright

   infringement.

2. Venue is appropriate in Broward County the acts or omissions related to Plaintiff's cause

   of action arose in the Circuit.

3. This Court has jurisdiction over the matter as the Plaintiff's allegations touch on violations

   of Florida state law.

## PARTIES

4. Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC (Hereinafter "Plaintiff"), is an

   entity licensed to do business in the state of Florida.

5. Defendant Adam Coroner Hereinafter "Defendant") is a U.S. citizen and a resident of the

state of Florida.

## FACTUAL ALLEGATIONS

6. Defendant and Plaintiff entered into a written contract in February 2022 for Plaintiff to provide Defendant management consultation and production. Such agreement is attached to this Complaint.

7. As a covenant in the retention agreement, Defendant agreed that Plaintiff would own the copyright to all content produced under the agreement between the parties.

8. Plaintiff relied on these promises, and would not have entered into this agreement with Defendant unless said promises were upheld.

9. Defendant breached his agreement with Plaintiff on July 28th, 2022, by failing to uphold the covenants in his management retention agreement, and further, continued and continues to date to publish copyrighted material on a 3rd party website without the consent or permission of Plaintiff.

10. Defendant's actions in publishing the copyrighted material injure and continue to injure Plaintiff to date, and Plaintiff pleads with the Court to enter a temporary and/or permanent injunction against Defendant.

## COUNT I - DEMAND FOR INJUNCTION

11. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 10 as if set forth herein in full.

12. Defendant has violated and continues to violate his contractual duties to date.

13. The Plaintiff is uniquely damaged by the dissemination of its copyrighted material by the Defendant without express permission.

14. Defendant's conduct as alleged constitutes acts worthy of a temporary or permanent injunction preventing the further injuring of Plaintiff's business.

15. A temporary injunction prior to a hearing on any permanent injunction would be proper

in this instance, and when balancing the equities, would not unduly burden the Defendant.

WHEREFORE, Plaintiff demands a temporary and/or permanent injunction enjoining the Defendant from any further injurious behavior against the Plaintiff's business.

## COUNT II - BREACH OF CONTRACT

16.  Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

17.  Defendant and Plaintiff entered into contract with one another in February 2022.

18.  Defendant materially breached his contract, and said breach has materially injured Plaintiff to date.

19.  In particular, the dissemination of copyrighted material without permission to a 3rd party site, contrary to the explicit covenants of the management retention agreement, is the aforesaid breach in this instance.

20.  This Court has the requisite authority to make Plaintiff whole from Defendant's breach of contract.

WHEREFORE, Plaintiff demands damages for the breach of contract above stated in this matter.

## COUNT III - COPYRIGHT INFRINGEMENT

21.  Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

22.  Defendant and Plaintiff engaged in contractual relations with each other.

23.  Within that written contract were provisions providing the Plaintiff with exclusive copyright authority over the published material in its agreement with Defendant.

24.  The Defendant has breached said agreement, and has infringed on the Plaintiff's copyright

rights, by disseminating protected copyright material which is the lawful property of the Plaintiff.

25. The Defendant had no authority after breaching said contract to disseminate the material, and has injured and continues to injure the Plaintiff to date.

WHEREFORE, Plaintiff demands damages for copyright infringement in this matter against the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court enter judgment in its favor and award it the following relief:

    a. All economic benefits lost as a result of Defendant's wrongful acts;

    b. Compensatory damages to fully compensate Plaintiff for its injuries caused by the Defendant's breach of contract and copyright infringement;

    c. An Order temporarily and/or permanently enjoining Defendant from any further unauthorized content usage;

    d. Pre- and post-judgment interest; and,

    e. Such other relief this Court deems just and proper, together with Plaintiff's costs and disturbances in this action.

Respectfully submitted on October 3, 2022.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that after filing, a copy of the Civil Complaint was served upon the Defendant via Florida process server.

S/Attorney Trescot J. Gear
Trescot J. Gear, Esq.
Fla Bar No. 118216

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B



# Social Media Agency

## Service Contract

This Service Contract ("Contract"), dated as of 4th day of February, 2022, is between Adam Coroner (The "TALENT") and Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE ("COMPANY") and shall be collectively referred to as the "PARTIES."

### Recitals:

WHEREAS the TALENT is in the business of producing, marketing and selling content on various online platforms, including but not limited to, TALENT's own website(s), OnlyFans.com, and various other social media platforms and

WHEREAS COMPANY is experienced and skilled in social media marketing, promotion, content creation, videography, photography, video and photo editing, social media management, business consultation, paid content deployment, paid content creation, paid content sales, and the general operation of subscription platforms including but not limited to TIKTOK, YouTube, Facebook, Instagram, Snapchat, Patreon, OnlyFans.com and its accompanying App. ("Only Fans") and other platforms; and

WHEREAS the TALENT wishes to engage Company as a full-service production, management, marketing and consulting company for the TALENT for the purpose of providing the services as more full set forth herein.

WHEREAS, COMPANY offers the SERVICES listed herein, TALENT accepts the same and both parties provide consideration, specifically, TALENT agrees to pay the fees contained herein and COMPANY agrees to perform the SERVICES herein.

The PARTIES agree as follows:

### 1. DESCRIPTION OF SERVICES AND TALENT OBLIGATIONS

(a) **Engagement.** The TALENT hereby retains COMPANY to provide, and COMPANY agrees to provide the SERVICES described in subsection (b) below. TALENT agrees that this is an exclusive CONTRACT and TALENT may not hire any other Company, individual, or entity to perform the same SERVICES as COMPANY.

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

**(b) Services.** COMPANY shall use good faith efforts to perform the following (the "SERVICES"), as and when reasonably necessary, in a timely and professional manner, in accordance with standards prevailing in the TALENT's industry, and in accordance with applicable laws, rules and regulations:

   a. Assist and guide Talent on scaling their online business and social media presence and aid in facilitation of all content that is posted on social media including, but not limited to, subscription platforms such as OnlyFans.com, Patreon, or any other Platform that PARTIES are now aware of or become aware of, by providing practical advice to TALENT.

   b. COMPANY will work to assist TALENT with promoting the products and content TALENT offers on their personal site(s), social media, OnlyFans.com, and any other Platform that PARTIES are now aware of or become aware of and decide to use.

   c. Company will regularly consult with TALENT on growing their online business, social media presence, and on what content TALENT should produce in order to fulfill customer orders on their website(s), platform(s), and OnlyFans.com. In situations where customer orders pertain to professionally produced content, COMPANY will assist TALENT in producing such content by performing filming, drafting and editing. In the event that the requested service exceeds the capability of COMPANY, COMPANY may, at its discretion, hire third parties to complete this function and will be entitled to reimbursement by the TALENT for the costs incurred.

   d. COMPANY will use good faith efforts to assist in the removal of any and all unauthorized publication of works produced as a result of this CONTRACT.

   e. In the performance of the SERVICES, COMPANY will serve the TALENT in good faith, ensuring, within its reasonable control, that it is:

      i. protecting the TALENT's interests consistent with the purpose of this CONTRACT;
      ii. observing all applicable laws related to the TALENT's activities; and
      iii. acting in accordance with professional production and management practices;

   f. COMPANY will use good faith efforts to communicate regularly with the TALENT concerning progress COMPANY has made in performing the SERVICES.

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

**(c) TALENT's Obligations.** The TALENT shall comply with all applicable laws, rules and regulations applicable hereto. The TALENT shall not engage in any activity or post any content that:

    a. Constitutes or promotes illegal activity or violates any applicable laws or regulations:

    b. infringes, violates or misappropriates any third-party intellectual property rights, including copyright, trade secrets or trademarks, publicity and/or privacy rights, is libelous, defamatory, abusing, harassing, or threatening, or in any way causes legal or actual damage to others;

    c. contains any obscene, racist or otherwise offensive material or language;

    d. exploits or harms children, directly or indirectly, including by exposing them to inappropriate material or asking them for any personal-information or remuneration;

    e. includes any visible logos or trademarks that belong to third parties unless the same are cleared in advance by COMPANY after receipt of written permission from the owner of such property;

    f. links to any third-party sites or services that would violate the standards and terms contained within this CONTRACT.

    g. The TALENT shall not advertise other paid media outlets(i.e. MyfreeCams, Fan Centro or Paid Snap) using their OnlyFans account during the term of this CONTRACT unless authorized in writing by COMPANY.

    h. The TALENT shall not engage in deceptive trade practices or otherwise violate Federal Trade Commission Regulations.

    i. TALENT will include affirmative, conspicuous disclosures of the sponsored nature of content.

## 2. COMPENSATION

**(a) Management Fee.** During the Term, COMPANY shall be entitled to a fee equal to 20% (Twenty percent) of the gross revenue (pre-tax, pre-costs, and without deduction of any third party processors or OnlyFans fees directly or any other commissions or fees) whether fixed or contingent, received or accrued. Compensation and any other form of remuneration or revenue in whatever form including without limitation bonuses, deferments, participations and the like, contingent or otherwise, sponsorships, advertising, merchandise, commercial tie-ins, Endorsements, or any other opportunity to earn income arising from, or otherwise in connection with the SERVICES herein (collectively, the "Compensation"), are payable as received or accrued.

COMPANY shall further be entitled to its fee with respect to revenue received after the expiration of the Term if it is generated prior to expiration

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

of the Term. It is agreed that all revenue received by TALENT within 30 days after expiration of the Term shall be attributed to COMPANY. If the TALENT's revenue increases by 50% or more during Term, the Term shall be automatically extended for an additional twelve (12) months from the would be end of the term contemplated under this CONTRACT. COMPANY, in its sole discretion, may choose not to renew. However, if no objection by COMPANY is made as to the renewal, all other terms herein shall remain in effect unless modified by subsequent writing and signed by both PARTIES.

**(b) Payment of the Fee.** The TALENT agrees to irrevocably direct third-parties as outlined below and to irrevocably authorize COMPANY on the TALENT's behalf to either:

    **a.** have the third parties pay to COMPANY the applicable Fee set forth above directly, deduct such amounts paid to Company from amounts of Compensation payable to the TALENT and then pay the TALENT the balance of the Compensation directly from the third parties, if the third parties so agree, **OR**

    **b.** if third parties do not so agree or are otherwise unable to, then it shall be the sole responsibility of the TALENT to, and TALENT agrees to, pay the Fee due to COMPANY on such compensation (as set forth above) immediately upon the earlier of receipt or accrual of the compensation. TALENT shall send proof of monthly revenue no later than the 28th of each month with the 20% fee not then paid and COMPANY shall invoice the TALENT for such amounts but such invoice shall not be a condition precedent to the obligation to remit the Fee to COMPANY.

## 3. TERM AND TERMINATION

**(a) Initial Term and Automatic Subsequent Terms.** This CONTRACT is effective as of the date written above and shall continue for a term of one (1) year (the "Initial Term"), provided that if TALENT is entitled to Compensation of fifty thousand (50,000) dollars or more during the Initial Term or Revenue is increased by more than 50% as outlined above, the Initial Term shall be automatically extended for an additional period of twelve (12) months. If TALENT is entitled to Compensation of two hundred thousand ($200,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of two (2) years. If TALENT is entitled to Compensation of one million (1,000,000) dollars or more during the Initial Term, the Initial Term shall be automatically extended for an additional period of three (3) years. Each extension shall be considered an "Additional Term"

Unless the Talent gives written notice to Company at least ninety (90) days before the end of the Initial Term or Additional Term, as applicable, this CONTRACT will renew automatically for additional, successive one (1) year

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

periods (each, an "Additional Term" and together with the Initial Term, collectively, the "Term").

**(b) Termination.** This CONTRACT may be terminated immediately and without notice upon discretion by COMPANY, with or without cause WITHOUT REMEDY TO TALENT, and may be terminated by Talent on ninety (90) days prior written notice for a material breach of this CONTRACT. TALENT shall cause notice upon COMPANY in writing describing the material breach with sufficient detail so as to allow COMPANY to correct the breach. COMPANY shall then have thirty (30) days from proper notice to correct alleged breach. If breach is cured, TALENT shall not be entitled to freely terminate this CONTRACT without consequence. In the event of early Termination by TALENT, compensation due to COMPANY shall continue to be paid until what would be the end of the Initial or additional Term but for the termination, whichever is later. This compensation shall be projected based on the highest month of income then achieved and multiplied by the number of months in the term and is due immediately. Example of this calculation is provided in section 12(b). If the projected value is lower than the actual value, TALENT shall be required to remit payment based on the actual amount as received or accrued but offset by the prior projected payment.

## 4. NATURE OF RELATIONSHIP

**(a) Independent Contractor.** The relationship of the parties under this CONTRACT is one of independent contractors, and no joint venture, partnership, agency, employer-employee, or similar relationship is created in or by this CONTRACT. Neither party may assume or create obligations on the other party's behalf, and neither party may take an action that creates the appearance of such authority, EXCEPT, COMPANY shall have the requisite authority to carry out its duties under this CONTRACT. TALENT is responsible for paying their own tax obligations created from the execution of this CONTRACT.

**(b) Control.** Company has the sole right to control and direct the means, details, manner, and method by which the SERVICES will be performed, and the right to perform SERVICES at any time, place, or location. COMPANY shall perform the SERVICES and TALENT is not required to hire, supervise, or pay any assistants to help COMPANY with respect thereto. Further TALENT shall not be permitted to hire, supervise, or pay any assistants to help COMPANY with respect thereto without prior written approval from COMPANY.

## 5. TALENT'S INTELLECTUAL PROPERTY

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

(a) **Reproduction and Distribution.** TALENT grants COMPANY a SOLE license so that COMPANY may use, reproduce, and distribute the TALENT's service marks, trademarks, and trade names, or any other intellectual property belonging to TALENT (collectively the "TALENT MARKS") in connection with the performance of the SERVICES. Sole license in this section is intended to mean that, other than TALENT, COMPANY shall be the sole party with authority to use TALENT's intellectual property.

(b) **Ownership Retention.** Any goodwill or other value generated or received from the use contemplated under 5(a) will accrue to the TALENT and TALENT shall remain the sole owner of the TALENT MARKS. COMPANY may not engage in activities or commit acts, directly or indirectly, that may contest, dispute, or otherwise impair the TALENT's interest in the TALENT MARKS. COMPANY may not apply for, acquire, or claim any interest in any TALENT MARKS, or other intellectual property that may be confusingly similar to any of the TALENT MARKS.

(c) **Copyright Ownership.** Any and all copyrights which may exist or come into being with respect to any and all content created by COMPANY on behalf of the TALENT and/or content created by TALENT at the instruction of COMPANY shall be the property of COMPANY. To the fullest extent permitted by law, TALENT hereby assigns any copyright which now exists and agrees to assign copyright he/she may acquire in any content created or posted on social media or online platforms to the COMPANY for the duration of the copyright and any extensions thereof. TALENT agrees to execute all necessary documents including a power of attorney to complete the transfer and assign any copyright interest of TALENT in content produced by COMPANY to COMPANY. It is expressly agreed that works created by COMPANY under this CONTRACT shall belong solely to COMPANY. A failure to execute necessary documents under this provision by TALENT shall be considered a breach and liquidated damages of $25,000 per occurrence shall be paid.

## 6. CONFIDENTIAL INFORMATION

(a) **TALENT's Confidential Information Defined.** During the Term, COMPANY may have access to or receive certain information of or about the TALENT that the TALENT designates as confidential in writing or that, under the circumstances surrounding disclosure ought to be treated as confidential, in the discretion of the COMPANY, by the COMPANY. This shall be referred to as "Confidential Talent Information". Confidential Talent Information includes identifying information relating to the TALENT or its current or proposed business, products, endorsements, sponsorships, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media.

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

**(b) COMPANY's Handling of Confidential Information.** COMPANY will treat the Confidential Talent Information as confidential, meaning, it will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT. In addition, COMPANY shall use reasonable care and diligence to prevent the unauthorized use or disclosure of such information by COMPANY's agents or employees.

**(c) Limitations of Obligations under this section.** The obligations and restrictions in this section do not apply to that part of the Confidential Talent Information that: (i) was or becomes publicly available other than as a result of a disclosure by COMPANY in violation of this CONTRACT; (ii) was or becomes available to COMPANY on a nonconfidential basis before its disclosure to COMPANY by the TALENT, but only if: (1) the source of such information is not bound by a confidentiality CONTRACT with the TALENT or is not otherwise prohibited from transmitting the information to COMPANY by a contractual, legal, fiduciary, or other obligation; and (2) COMPANY provides the TALENT with written notice of its prior possession either (I) before the effective date of this CONTRACT or (II) if COMPANY later becomes aware (through disclosure to COMPANY) of any aspect of the Confidential Talent Information as to which COMPANY had prior possession, promptly on COMPANY so becoming aware; (iii) is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, COMPANY shall: (1) provide the TALENT with prompt notice of these requests or requirements before making a disclosure so that the TALENT may seek an appropriate protective order or other appropriate remedy; and (2) provide reasonable assistance to the TALENT in obtaining any protective order. If a protective order or other remedy is not obtained or the TALENT grants a waiver under this CONTRACT, COMPANY may furnish that portion (and only that portion) of the Confidential Talent Information that is, in the written opinion of counsel reasonably acceptable to the TALENT or that COMPANY is legally compelled or otherwise required to disclose. However, COMPANY shall make reasonable efforts to obtain reliable assurance that confidential treatment will be afforded to any part of the Confidential Talent Information disclosed in this way or was developed by COMPANY independently without breach of this CONTRACT.

**(d) COMPANY's Confidential Information Defined.** During the Term, the TALENT may have access to or receive certain information of or about COMPANY that COMPANY designates as confidential or that, under the circumstances surrounding disclosure ought to be treated as confidential by the Talent ("Confidential Company Information"). Confidential Company Information includes but is not limited to advice given to TALENT in the performance of COMPANY's SERVICES, information relating to COMPANY or its current or proposed business, promotion techniques, financial statements, budgets and projections, customer identifying information,

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

employers, consultants, vendors, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The TALENT will treat the Confidential Company Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill its obligations in this CONTRACT.

(e) **TALENT's Handling of COMPANY Confidential Information.** TALENT shall use due care and diligence to prevent the unauthorized use or disclosure of such information. For the avoidance of doubt, the TALENT shall treat this CONTRACT as Confidential Company Information.

(f) **Liquidated Damages.** The parties agree that in the event of a breach of the confidential provisions, it would be impracticable and extremely difficult to ascertain the amount of actual damages or fix actual damages. Therefore, it is agreed that in the event of such a breach, the TALENT shall pay, as liquidated damages, and not as penalty, the sum of Twenty-Five Thousand Dollars ($25,000.00) for each breach. Because the injury or injuries that the COMPANY may sustain by reason of the breach may not be readily ascertainable and not easily proved, the foregoing amount is understood and agreed by the parties as reasonable liquidated damages and is intended as compensation and not as a penalty for the injury or injuries suffered and the loss incurred because of such a breach. In an action initiated by COMPANY to enforce any of the provisions of this CONTRACT or to seek damages for breach of the provisions of this CONTRACT, the COMPANY shall be entitled to recover reasonable attorney's fees.

## 7. FORCE MAJEURE

(a) If the TALENT fails, refuses or is unable for any reason whatsoever, which cannot be overcome by due diligence, to render services hereunder or if production of the TALENT's services is interrupted or materially interfered with because of any force majeure events (e.g., any labor dispute, strike, lock-out, fire, war, act-of-God, epidemic, pandemic, governmental action or proceeding, injunction, illness, disability, death or other material interference with the production of the Talent's services or any other event beyond the Talent's and/or Company's control, the Term of this CONTRACT shall be extended for by a period equal to the duration of any such failure, refusal, or inability or the occurrence of any of the foregoing events. Either party shall be excused from such performance to the extent that either party's respective obligations are necessarily prevented, hindered or delayed during the continuance of any such happening or event and this contract shall be deemed suspended except to the extent that the CONTRACT may still be performed, including payment of the fee to COMPANY. Strictly economic conditions may not be used in excusing obligations arising herein.

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

## 8. REPRESENTATIONS AND WARRANTIES

(a) **TALENT's Representations and Warranties.** The TALENT represents and warrants as follows: (i) that the TALENT has the right to enter into this CONTRACT and that the consent of no other party is necessary with respect thereto; and (ii) that the TALENT is not subject to any conflicting obligations or disabilities, which will prevent or interfere with the execution and performance of this CONTRACT.

(b) **COMPANY's Representations and Warranties.** The COMPANY makes no warranties or representations beyond what is stated within this CONTRACT. Specifically, COMPANY makes no warranty or representation with respect to the amount of compensation that The TALENT will generate in connection with COMPANY's SERVICES pursuant to this CONTRACT and nothing contained herein shall be construed to obligate COMPANY to take any further action to maximize such compensation. COMPANY only warrants that it will provide, in its best judgement, advice to accomplish the SERVICES in 1(b). Nothing contained in this CONTRACT shall be construed as creating a fiduciary relationship between COMPANY and TALENT.

## 9. INDEMNITY

(a) **General.** THE TALENT SHALL INDEMNIFY AND HOLD HARMLESS COMPANY, ITS PARENT, SUBSIDIARIES, SUCCESSORS, LICENSEES AND ASSIGNS AND ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, TRUSTEES OR REPRESENTATIVES AGAINST ANY AND ALL LIABILITY, DAMAGES, COSTS AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE OUTSIDE ATTORNEYS' FEES AND COSTS, IN CONNECTION WITH ANY THIRD PARTY CLAIM OR ACTION ARISING OUT OF THE UNCURED MATERIAL BREACH OF ANY OF THE TALENT'S REPRESENTATIONS, WARRANTIES, CONTRACTS, UNDERTAKINGS OR CERTIFICATIONS HEREUNDER, INCLUDING BUT NOT LIMITED TO A BREACH BY THE TALENT OF THE CONFIDENTIALITY AND NON-DISCLOSURE PROVISIONS, OR MATERIAL SUPPLIED TO COMPANY BY THE TALENT, OR MATERIAL INCORPORATED BY COMPANY ON BEHALF OF OR AT THE REQUEST OF THE TALENT IN ANY PRODUCTION, PHOTO SHOOT, ETC. FOR USE IN THE PERFORMANCE OF THE TALENT'S SERVICES HEREUNDER; OR THE DEVELOPMENT, PRODUCTION, ADVERTISING, PROMOTION, DISTRIBUTION AND/OR EXPLOITATION OF THE TALENT'S CONTENT OR ELEMENTS THEREOF OR ANCILLARY THERETO. TALENT EXPLICITLY AGREES TO INDEMNIFY COMPANY IN THE EVENT THAT TALENT PROVIDES INTELLECTUAL PROPERTY TO COMPANY THAT TALENT IS NOT AUTHORIZED TO PROVIDE EVEN IN THE PRESENCE OF NEGLIGENCE ON THE PART OF THE COMPANY IN USING, POSTING, OR PRODUCING IT ANY WAY. TALENT FURTHER AGREES TO

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

INDEMNIFY COMPANY IN THE EVENT THAT POSTS OR THE LIKE
VIOLATE APPLICABLE LAWS OR REGULATIONS INCLUDING BUT NOT
LIMITED TO THE FEDERAL TRADE COMMISSION AND STATE LAWS
AND CAUSES DAMAGES, INCLUDING THE COST TO DEFEND. THIS
INDEMNIFICATION BY TALENT ALSO COVERS IMPROPER SALES TO
MINORS.

(b)   **Retention Of Control & Indemnity.** COMPANY AND THE TALENT
SHALL, UPON PRESENTATION OR INSTITUTION OF ANY CLAIM OR
ACTION COVERED BY THE FOREGOING INDEMNITY, PROMPTLY
NOTIFY THE OTHER OF THE CLAIM OR ACTION, GIVING THE DETAILS
THEREOF. ALL ASPECTS OF THE DEFENSE OF SUCH CLAIMS OR
ACTIONS, WHETHER AS PART OF ANY LITIGATION, NEGOTIATION OR
OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY DECISION
REGARDING SETTLEMENT), SHALL BE CONTROLLED BY COMPANY.
COMPANY SHALL BE FREE TO USE COUNSEL OF COMPANY'S CHOICE
IN CONNECTION THEREWITH. COMPANY'S CONTROL SHALL NOT
DIMINISH THE TALENT'S OBLIGATIONS UNDER PARAGRAPH 9 (A)
ABOVE. THE TALENT SHALL REASONABLY COOPERATE IN THE
DEFENSE OF ANY CLAIM OR ACTION FOR WHICH INDEMNIFICATION
IS PROVIDED HEREUNDER AND SHALL HAVE THE RIGHT (AT THE
TALENT'S EXPENSE) TO HAVE COUNSEL PRESENT IN CONNECTION
THEREWITH, PROVIDED SUCH COUNSEL FULLY COOPERATES WITH
COMPANY'S COUNSEL AND DOES NOT INTERFERE WITH THE
REASONABLE HANDLING OF THE CLAIM OR ACTION BY COMPANY.
COMPANY SHALL NOT SETTLE ANY SUCH CLAIM(S) ADVERSE TO THE
TALENT WITHOUT THE TALENT'S PRIOR WRITTEN APPROVAL AND
SAID APPROVAL MAY NOT BE UNREASONABLY WITHHELD.

## 10.   ASSIGNMENT

(a)   **General.** COMPANY may unilaterally assign, license and/or delegate this
CONTRACT (in whole or in part) to any entity, individual, parent,
subsidiary or affiliated corporation of Company, or to any entity with or
into which COMPANY merges or consolidates, or which succeeds to all or
a substantial portion of COMPANY's assets. This CONTRACT and any or
all of said rights, obligations, options, privileges and/or services shall
inure to the benefit of and may in turn be freely licensed or assigned by,
any such assignee, successor, transferee or delegate. The services to be
rendered by the TALENT hereunder are personal to the TALENT and of
the essence of this CONTRACT. Neither this CONTRACT nor any of the
TALENT's rights or obligations hereunder may be assigned, delegated or
otherwise transferred by the TALENT; EXCEPT that the TALENT may
assign the right to receive the Compensation due from COMPANY at any

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

time. Any such assignment shall at all times be subject to all of COMPANY's rights hereunder. Any assignment shall be evidenced in writing and provided to the other party promptly.

## 11.NOTICES

(a) **General.** Unless otherwise provided herein, all notice from the TALENT shall be in writing and shall be sent to the address set forth below (subject to changes of which the parties are notified in writing). Notices from TALENT shall be given by registered or certified mail (postage prepaid), and shall be deemed given on the date delivered. The time to respond to notices given during the week in between Christmas Eve and New Year's Day shall be tolled until five (5) business days following New Year's Day. Until further notice, the addresses of the company shall be as follows:

**COMPANY's ADDRESS FOR NOTICE:**
**39939 Pretty Pond Road Zephyrhills FL 33540**

**TALENT's ADDRESS FOR NOTICE:**
1780 Mallard Lake Rd.

## 12.MISCELLANEOUS

(a) **Entire CONTRACT, Severability and Counterparts.** This CONTRACT expresses the entire understanding of the parties hereto and replaces any and all former CONTRACTs or understandings, written or oral, relating to the subject matter hereof. This CONTRACT may not be modified except by a written instrument signed by the parties. Nothing herein contained shall be construed so as to require the commission of any act contrary to law, and if there is any conflict between any provision of this CONTRACT and any present or future statute, law, ordinance, regulation or provision of any applicable collective bargaining CONTRACT contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision of this CONTRACT affected shall be curtailed and limited only to the extent necessary to make it consistent with such legal requirements or provisions. This CONTRACT may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the CONTRACT.

(b) **Delivery of Further Instruments.** The TALENT will execute, acknowledge and deliver to COMPANY or cause to be executed, acknowledged and delivered to COMPANY, all further agreements and instruments consistent with this CONTRACT which Company may deem necessary to carry out and effectuate the purpose of this CONTRACT. If TALENT shall fail for any reason to execute and deliver within five (5) business days of Company's written request, that will be considered a

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

material breach. A material breach as described here shall require full payment of all compensation under the CONTRACT through the end of the term(s) as liquidated damages, in addition to damages under 6(f). For each month of the term not yet past, the compensation shall be based on the highest month then achieved. For example, if only 2 months have passed in the twelve-month term and the higher of the 2 months is $10,000, then the remaining months in the term shall all be paid as though $10,000 was earned. Except that, if additional money is earned by TALENT in the subsequent term than paid herein, COMPANY shall be entitled to the difference, but in no event shall COMPANY be responsible to return any of the liquidated damages payments.

(c) **The TALENT's Services are Unique; Remedies.** The TALENT's services are extraordinary and unique and not replaceable. There is no adequate remedy at law for a material breach of this Agreement by the Talent. In the event of a material breach by the TALENT, COMPANY shall be entitled to seek equitable relief by way of injunction or otherwise. If the Courts so determine that an order causing the TALENT to perform cannot be supported by law or CONTRACT, then TALENT agrees to pay the liquidated damages as described in the Termination Section of this Contract. Under no circumstances may the TALENT seek equitable relief against COMPANY, all such rights being waived. The TALENT acknowledges and agrees that exemplary or punitive damages shall not be recoverable under any circumstance for any claim arising hereunder or in connection herewith. The TALENT's sole remedy in the event of a breach or alleged breach of any provision of this CONTRACT shall be an action for money damages in accordance with the dispute resolution provisions set forth below. Under no circumstances shall the TALENT be entitled to recover consequential or expectancy damages of any kind, to terminate, revoke, or rescind this CONTRACT, or to obtain any injunctive or other equitable relief in connection with this CONTRACT. The TALENT irrevocably relinquishes, waives, releases and disclaims any right, at any time, to any such injunctive or other equitable relief.

(d) **Publicity Restrictions/Non-Disclosure.** The TALENT shall not, without COMPANY's prior written approval, (i) issue or authorize the publication of any news story, publicity or publicity materials relating the TALENT's services hereunder, or COMPANY or its affiliates, (ii) make any derogatory or knowingly false statements concerning COMPANY or any officers, employees or affiliates of COMPANY, (iii) disclose any confidential information regarding COMPANY or its affiliates other than to business representatives, attorneys and as required by law, including, but not limited to, the nature of the SERVICES COMPANY provides or how it operates the TALENT's accounts, or (iv) encourage any other individual to do any of the foregoing; provided, however, the TALENT may issue personal publicity primarily concerning the TALENT in which the

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

COMPANY or any officers or employees of COMPANY are mentioned incidentally, so long as such references are not derogatory or knowingly false, are limited to reporting factual events or occurrences only, do not contain any confidential information and are made in a manner that could not reasonably constitute an endorsement of the TALENT.

(e)   **Governing Law** This CONTRACT shall be governed by the laws of the State of Florida with venue being in the closest court of competent jurisdiction to COMPANY.

(f)   **Disputes and Resolution** The parties will attempt in good faith to resolve any controversies, claims or disputes arising out of or related to this CONTRACT or the interpretation, performance or breach thereof including, but not limited to, alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this CONTRACT.

If the parties are unable to reach a mutually acceptable resolution within thirty (30) days after either party gives the other party written notice of a Dispute, then such Disputes, except as set forth in Paragraphs 12(f)(ii) below, shall be resolved according to the procedures set forth in Paragraph 12(f)(i) below, which shall constitute the sole dispute resolution mechanism hereunder.

(i)   **Mediation Then Arbitration:** All Disputes shall be mediated with costs borne equally within 60 days of a failure to resolve disputes under 12(f). If mediation is unsuccessful then binding arbitration shall occur in the same county as the COMPANY. The Arbitration shall be initiated and conducted according to either JAMS Streamlined or Comprehensive Arbitration Rules and Procedures, or other similar procedure except as modified herein. The arbitration shall be conducted before a single neutral arbitrator with at least 10 years entertainment experience. The Arbitrator shall follow Florida law and Florida rules of evidence in adjudicating the Dispute. Parties agree to waive rights to punitive damages and agree that Arbitrator shall not have authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. Unless the parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any Florida state or federal court with experience in matters involving the entertainment industry. Costs for the Arbitrator shall be borne equally. Each party shall be responsible for its own attorney fees. Judgment upon the award may be entered in any court of competent jurisdiction.

DocuSign Envelope ID: 3FEDA2F0-C703-4B79-8D6F-004E6BCCEC4B

    **(ii)**   **Jurisdiction and Venue.** Any dispute or part thereof or any claim for a particular form of relief (not otherwise precluded by any other provision of this agreement), that may not be arbitrated pursuant to applicable law may be heard only in a court of competent jurisdiction and the Venue shall be the closest court with jurisdiction to COMPANY's address listed above. Parties hereby submit to the exclusive jurisdiction and venue of the local, state and federal courts located in the county in which COMPANY is based.

**(g) Advice of Counsel.** EACH PARTY ACKNOWLEDGES THAT IN EXECUTING THIS CONTRACT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS CONTRACT. THIS CONTRACT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

**THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT AS OF THE DATE FIRST SET FORTH ABOVE.**

**TALENT**
By: _Adam Coroner_
    CE3BEC4A7EA9457
**(Print Name):** Adam Coroner
**Date:** 2/4/2022 / _____

**Seth Holbrook Fitness LLC d/b/a SOCIAL ATHLETE**
By: _____
    ED6C1DB07BC47E
**Its: (Position)** _____ CEO
**Authorized Signatory Seth Holbrook**



### IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
### IN AND FOR BROWARD COUNTY
### CIRCUIT CIVIL DIVISION

SOCIAL ATHLETE d/b/a
SETH HOLBROOK FITNESS, LLC

     Plaintiff,

vs.

DUSTIN YOUNG,

     Defendant.

_____/

### PLAINTIFF'S CIVIL COMPLAINT AND
### REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC hereby submits its Civil

Complaint and Request for Temporary or Permanent Injunction against Defendant Dustin Young

and for the causes of action alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action by Plaintiff against Defendant for breach of contract, and an action

seeking temporary and permanent injunction against Defendant for wrongful acts, in excess of

$30,000.00.

2.     Venue is appropriate in Broward County because Plaintiff operates in the Circuit,

Defendant contracted with Plaintiff for exclusive venue in the Circuit, and the acts or omissions

related to Plaintiff's cause of action arose in the Circuit.

3.     This Court has jurisdiction over the matter as the Plaintiff's allegations touch on

violations of Florida state law.

### PARTIES

1

4.      Plaintiff Social Athlete d/b/a Seth Holbrook Fitness, LLC (Hereinafter "Plaintiff"), is an entity licensed to do business in the state of Florida.

5.      Defendant Dustin Young (Hereinafter "Defendant") is a U.S. Citizen and Florida resident.

## GENERAL FACTUAL ALLEGATIONS

6.      Defendant retained Plaintiff on November 11th, 2021 for Plaintiff to provide Defendant management consultation and production services.

7.      As a covenant in the November 2021 management retention agreement, Defendant agreed that Plaintiff would own the copyright to all content produced under the agreement between the parties.

8.      Plaintiff relied on these promises, and would not have entered into this agreement with Defendant unless said promises were upheld.

9.      Defendant breached his agreement with Plaintiff on February 2nd, 2022 by failing to uphold the covenants in his management retention agreement, and further, continued and continues to date to publish copyrighted material on a 3rd party website without the consent or permission of Plaintiff. Defendant also refused to pay Plaintiff the monthly fee installment as required by the Agreement.

10.     Defendant's actions in publishing the copyrighted material injure and continue to injure Plaintiff to date, and Plaintiff pleads with the Court to enter a temporary and/or permanent injunction against Defendant.

## COUNT I- DEMAND FOR INJUNCTION

11.     Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

12.     Defendant has violated and continues to violate his contractual duties to date.

13.     The Plaintiff is uniquely damaged by the dissemination of its copyrighted material by the Defendant without express permission or payment.

14.     Defendant's conduct as alleged constitutes acts worthy of a temporary or permanent injunction preventing the further injuring of Plaintiff's business.

## COUNT II- BREACH OF CONTRACT

15.     Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 10 as if set forth herein in full.

16.     Defendant and Plaintiff entered into contract with one another in October 2021.

`    17. Defendant materially breached his contract in December 2021, and said breach has materially injured Plaintiff to date.

18.     In particular, the dissemination of copyrighted material without permission to a 3rd party site, contrary to the explicit covenants of the management retention agreement, is the aforesaid breach in this instance.

19.     This Court has the requisite authority to make Plaintiff whole from Defendant's breach of contract.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff requests that the Court enter judgment in its favor and award it the following relief:

a.     All economic benefits lost as a result of Defendant's wrongful acts;

b.     Compensatory damages to fully compensate Plaintiff for its injuries caused by the Defendant's breach of contract;

c.     An Order temporarily and/or permanently enjoining Defendant from any further

unauthorized content usage or copyright infringement;

d.  Pre- and post-judgment interest; and,

e.  Such other relief this Court deems just and proper, together with Plaintiff's costs

and disbursements in this action.

Respectfully submitted on February 24th, 2022.

S/Trescot Gear__
Attorney Trescot Gear
Florida Bar No. 118216
Gear Law, LLC
1405 West Swann Avenue
Tampa, FL 33606

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that after filing, a copy of the Civil Complaint was served upon the Defendant via Florida process server.

S/Trescot Gear, Esq.

# EXHIBIT J

screenshot-cocatalog.loc.gov-2022.12.29-20_18_00
https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=social+athlete&Search_Code=NALL&PID=QIoHafE-
OIoHravCNo4ihsNBq0&SEQ=20221229201727&CNT=25&HIST=1
29.12.2022



screenshot-cocatalog.loc.gov-2022.12.29-20_19_16
https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?
Search_Arg=SETH+HOLBROOK+FITNESS%2C+LLC&Search_Code=NALL&PID=shBateYRvEu8UPhY8h42qkjCwvz&SEQ=20221229201847&CNT=25&HIST=1
29.12.2022



# EXHIBIT K

screenshot-sethholbrook.com-2022.12.28-16_58_45
https://sethholbrook.com/collections/socialmedia/products/stolen-content-removal
28.12.2022



   



# EXHIBIT L

## Veronika Balbuzanova

**From:** OnlyFans Support <support@onlyfans.com>
**Sent:** Tuesday, September 6, 2022 2:50 PM
**To:** Veronika Balbuzanova <VB@JohnsonDalal.com>
**Subject:** [OnlyFans] Re: RE: [OnlyFans] Re: DMCA Counter-Notification o/b/o Mr. Mycol Armani (@armaniluxx)

##- Please type your reply above this line -##

Your request (7435414) has been updated. To add additional comments, reply to this email.

## Dana (OnlyFans)

Sep 6, 2022, 19:50 GMT+1

Hi Veronica,

Thank you for staying in touch.

Please be informed that we've received a notification from **Social Athlete** about a copyright infringement lawsuit (attached). Therefore, the accounts **@armaniluxx** and **@armanidlux** have to stay deactivated unless the court makes the final judgment in the content creator's favor.

Since the notice was sent to us before the Labor Day holidays, it took our Legal Team a few extra days to check its validity with the court clerk.

We also kindly ask you to notify us when a final judgment is issued.

Sincerely,

Dana
OnlyFans

## Veronika Balbuzanova

Sep 2, 2022, 19:53 GMT+1

This is a follow-up to your previous request #7303960 "DMCA Counter-Notification o..."

Good afternoon Dana,

1

Based on our calculations, yesterday (9/1) was the last of the 10 business days for Social Athlete to submit notice of a copyright infringement lawsuit in response to our DMCA counter notification. To the best of our knowledge, no such notice of a copyright infringement lawsuit was timely submitted by Social Athlete yet the subject account @armaniluxx remains deactivated. Please advise as to when the subject account @armaniluxx will be reactivated and when our client can reasonably expect to have regained access to said account.

Thank you in advance for your assistance.

Have a wonderful holiday weekend.

Best Regards,

Veronika Balbuzanova, Esq.

Associate Attorney

Johnson | Dalal®

Patents Trademarks Copyrights

111 N. Pine Island Road

Suite 105

Plantation, FL 33324

Office: (954) 507-4500

Fax: (954) 507-4502

www.PatentandTrademarkLaw.com (https://nam03.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.PatentandTrademarkLaw.com&data=02%7C01%7C%7Ce2340498fe6741c3f4eb08d5fc638368%7C84df9e7fe9f640afb435aaaaaaaaaaaa%7C1%7C0%7C636692426686812830&sdata=gFGY%2B5T%2BFG4sFBbMp2K33N2F%2BtWQyv6eN8ZRT02ZVzQ%3D&reserved=0)

NOTICE: This communication and any attachment contains confidential information that may be legally privileged and may be offered in associated with a settlement communication (under Fed. R. Evid. 408, or state equivalent). Therefore, if you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this communication or any attachments to it and/or said communication may only be used in connection with its intended purpose. If you have received this communication in error, please notify us immediately by a reply communication and/or by telephone at 954.507.4500 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.

This email is a service from OnlyFans. Delivered by Zendesk